*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALASKA AIRLINES, INC.; EBERLE VIVIAN, INC.; AIGA, as successor in interest to LUMBERMEN'S INSURANCE COMPANIES; and NORTHERN ADJUSTERS, INC., | ) ) ) ) ) ) |
| Appellants and Cross-Appellees, | ) ) ) |
| v. | ) ) |
| PAMELA DARROW, f/k/a/ PAMELA CREEKMORE, | ) ) ) |
| Appellee and Cross-Appellant, | ) ) ) |
| and | ) ) |
| STATE OF ALASKA, DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT, DIVISION OF WORKERS' COMPENSATION, | ) ) ) ) ) |
| Intervenor and Cross-Appellee. | ) ) ) ) |

Supreme Court Nos. S-16127/16143

Alaska Workers' Compensation Appeals Commission No. 14-024

O P I N I O N

No. 7192 - August 25, 2017

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Richard L. Wagg, Russell Wagg Meshke & Budzinski, Anchorage, for Appellants/Cross-Appellees.

J. John Franich, Franich Law Office, LLC, Fairbanks, for Appellee/Cross-Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and James E. Cantor, Acting Attorney General, Juneau, for Intervenor/Cross-Appellee State of Alaska.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.  INTRODUCTION

An employee continued to work for over ten years after a job-related knee injury but had multiple surgeries on her injured knee.  Over time, her employer made several permanent partial impairment payments, and she was eventually determined to be permanently and totally disabled because of the work injury.  She began to receive Social Security disability at about the same time she was classified as permanently and totally disabled for workers' compensation.

Her employer asked the Alaska Workers' Compensation Board to allow two offsets to its payment of permanent total disability (PTD) compensation: one related to Social Security disability benefits and one related to the earlier permanent partial impairment (PPI) payments.  The Board established a Social Security offset and permitted the employer to deduct the amount of previously paid PPI (adjusted for inflation).

The employee appealed to the Alaska Workers' Compensation Appeals Commission, arguing that the Board had improperly applied one of its regulations in allowing the PPI offset and had incorrectly calculated the amount of the Social Security offset.  She also brought a civil suit against the State challenging the validity of the regulation.  The State intervened in the Commission appeal; the lawsuit was dismissed.

The Commission reversed the Board's calculation of the Social Security offset and affirmed the Board's order permitting the PPI offset. The employer appealed the Commission's Social Security offset decision to this court, and the employee cross-appealed the PPI offset. We affirm in part and reverse in part.

## II.     FACTS AND PROCEEDINGS

Pamela Darrow worked for Alaska Airlines at the Fairbanks airport in 1996. While working, she suffered a knee injury that required multiple surgeries and ultimately led to her becoming permanently and totally disabled. Darrow held other jobs in the years following the 1996 injury, and Alaska Airlines paid her temporary total disability (TTD) during times she was unable to work because of her injury. Alaska Airlines also made four payments for PPI for a total of $40,500.[1] The last payment was made in 2005.

In 2012 the Social Security Administration decided Darrow met its standards for disability related to her knee, found her disabled as of December 2010, and determined that her first month of eligibility for benefits was June 2011. In January 2013 Darrow filed a written workers' compensation claim for PTD benefits and an adjustment of her disability compensation rate.[2] She was receiving TTD at the time and was in the reemployment process.[3]

---

[1]     PPI is calculated by multiplying the percentage of an injured worker's permanent impairment by a fixed amount. AS 23.30.190(a). At the time of Darrow's injury, the fixed amount was $135,000. Former AS 23.30.190(a) (1996). Using the medical reference named in the statute, Darrow's doctor ultimately rated Darrow as having a 30% whole person impairment.

[2]     When a worker is permanently and totally disabled, AS 23.30.220(a)(10) permits the Board to base compensation on a wage rate the employee could earn during the period of disability rather than what she earned before the injury.

[3]     The reemployment process, which helps to prepare an employee to return
(continued...)

Alaska Airlines initially objected to her reclassification, but later agreed she was permanently and totally disabled. It objected to the compensation rate adjustment and noted it might be entitled to an offset for Darrow's Social Security disability (SSDI) under AS 23.30.225(b).[4] Alaska Airlines later petitioned the Board to allow it two offsets: one for SSDI and another one, pursuant to AS 23.30.180, for the PPI it had paid earlier.[5]

During Darrow's 2014 deposition Alaska Airlines learned that she had also been working for the State of Alaska at the time of her injury, which affected her compensation rate.[6] The parties later entered into a partial settlement in which they agreed that: (1) Darrow's "average weekly wage" when the injury occurred was $668.98, rather than $270 as the adjuster had initially calculated;[7] (2) she became

---

[3]    (...continued)
to work in a different job when she can no longer return to her former one, is set out in AS 23.30.041.

[4]    Alaska Statute 23.30.225(b) authorizes an offset to an employer's disability payments when an employee gets both workers' compensation and SSDI for the same injury.

[5]    Alaska Statute 23.30.180 provides in part, "If a permanent partial disability award has been made before a permanent total disability determination, permanent total disability benefits must be reduced by the amount of the permanent partial disability award, adjusted for inflation, in a manner determined by the board."

[6]    Pursuant to AS 23.30.220(a)(7), "when the employee is working under concurrent contracts with two or more employers, the employee's earnings from all employers is considered as if earned from the employer liable for compensation."

[7]    The partial settlement indicated that the average weekly wage was "computed under the 1996 version of AS 23.30.220(a)(4)(A)" and that the initial calculation "did not take into account" Darrow's concurrent employment with the State. No records were available to show how the adjuster at the onset of the case determined
(continued...)

disabled for purposes of the Alaska Workers' Compensation Act (Act) on October 8, 2012; (3) Alaska Airlines would pay Darrow an additional $15,000 related to penalties and interest "in satisfaction of all claims prior to March 8, 2012"; and (4) Darrow's attorney would receive "minimum statutory fees on all previously disputed benefits." They listed four unresolved issues in the partial settlement: one related to the Board's exercise of discretion under AS 23.30.220(a)(10) to determine a wage rate for calculating Darrow's PTD amount,[8] one regarding the percentage of PTD that could be withheld for any overpayment, and the two raised in this appeal.

The Board held a hearing in August 2014; because the contested issues were primarily legal, no witnesses testified. Darrow argued that, contrary to Alaska Airlines' assertion, AS 23.30.180 did not permit Alaska Airlines to offset the amount of PPI it had previously paid her because the statute authorized an offset for permanent partial *disability* rather than permanent partial *impairment*.[9] Although a Board regulation

---

[7]     (...continued)
the average weekly wage. The applicable subsections of the 1996 version of AS 23.30.220(a) used the phrases *gross weekly earnings* and *spendable weekly wage*, *see* former AS 23.30.220(a) (1996), but the parties referred to the *average weekly wage* in the partial settlement.

[8]     Alaska Statute 23.30.220(a)(10) permits the Board to "determine gross weekly earnings by considering the nature of the employee's work, work history, and resulting disability" when an employee is PTD and the Board decides that the amount of gross weekly earnings under other statutory subsections "does not fairly reflect the employee's earnings during the period of disability." The amount of compensation is tied to an employee's gross weekly earnings. AS 23.30.175, .180, .185, .200, .220(a). Alaska Airlines later agreed with Darrow's calculation of $1,390 as her adjusted average weekly wage under subsection .220(a)(10). Counsel told the Board the figure was based on a vocational expert's report.

[9]     *Compare* AS 23.30.190(a) (providing for compensation "[i]n case of (continued...)

provided that "[f]or purposes of (b) of this section and AS 23.30.180, permanent partial disability benefits include permanent partial impairment benefits paid under AS 23.30.190,"[10] Darrow contended the regulation was against legislative intent. She asked the Board to adopt the reasoning of *Miller v. Municipality of Anchorage*, in which the Board based an offset on the worker's adjusted weekly wage,[11] when calculating the SSDI offset. Under Darrow's analysis, Alaska Airlines would not be entitled to an SSDI offset because the offset calculation resulted in a negative number.

Alaska Airlines argued first that it was entitled to an SSDI offset based on Darrow's actual wages in 1996 rather than the amount it had agreed to as an adjusted wage under AS 23.30.220(a)(10). It contended that the statement in *Underwater Construction, Inc. v. Shirley* that the phrase *average weekly wages* in AS 23.30.225(b) was "the same as 'gross weekly earnings' in AS 23.30.220(a)(1)"[12] meant that only AS 23.30.220(a)(1) could be used to establish gross weekly earnings. Alaska Airlines maintained that the purpose of AS 23.30.225 was to save the employer money and that the way to effectuate this purpose was to calculate the offset using Darrow's actual 1996

---

**9** (...continued)
impairment partial in character but permanent in quality, and not resulting in permanent total disability"), *with* AS 23.30.180(a) (requiring reduction of PTD by "the amount of the permanent partial disability award, adjusted for inflation").

**10** 8 Alaska Administrative Code (AAC) 45.134(c) (2011). 8 AAC 45.134(b) provides, "In accordance with AS 23.30.155(j), the employer may reduce permanent total disability benefits to recover permanent partial disability benefits previously paid by the employer for the same injury."

**11** AWCB Dec. No. 13-0099 at 27, 2013 WL 4508816, at *20 (Aug. 20, 2103).

**12** 884 P.2d 150, 154 (Alaska 1994).

wage, even though Darrow would get less money in combined SSDI and PTD than she would get in PTD alone under this proposal.[13]

Alaska Airlines acknowledged that AS 23.30.180 provided for an offset for permanent partial disability (PPD) rather than PPI. But it argued that in enacting AS 23.30.180, the legislature intended "to avoid double payment for injuries" that cause first a permanent impairment and later a permanent total disability. Alaska Airlines pointed out that AS 23.30.190(a), the statute authorizing PPI, directs payment of PPI only when the partial impairment does not "result[] in permanent and total disability." It argued that if an employee was paid PPI and later became permanently and totally disabled, the employer should get a credit for the previously paid PPI as an advance payment of PTD. Alaska Airlines cited several Board decisions that allowed an offset for PPI when a claimant received PTD, and maintained that the Board's regulation "equat[ing] permanent and partial disability with permanent and partial impairment" required the Board to consider the terms synonymous.

In its decision the Board adopted the approach used in *Miller*, but its application of *Miller* did not give Darrow the outcome she wanted.[14] Instead, the Board's result when it calculated the SSDI offset was the same as Alaska Airlines' proposal. When it turned to the PPI offset, the Board referred to the legislative history of the 1988 amendments to the Act that replaced permanent partial disability with permanent partial impairment. It also quoted from *Larson's Workers' Compensation*

---

[13]     Under Alaska Airlines' calculation of the SSDI offset, Darrow would receive $535.18 a week in combined SSDI and PTD instead of $668.98 in PTD alone.

[14]     In applying *Miller*, the Board limited Darrow's adjusted wages under AS 23.30.220(a)(10) to $668.90. As the Commission pointed out, this was erroneous.

*Law* to explain the differences between *impairment* and *disability* in compensation.[15] The Board concluded that the legislature intended to change the partial impairment benefit under the Act to "a physical impairment benefit" rather than a disability benefit; it therefore concluded that payment of both PPI and PTD would not result in Darrow receiving duplicate compensation for the same loss. The Board did not think Alaska Airlines should be entitled to an offset for PPI according to statute, but it allowed the offset because it considered itself bound by its own regulation stating that "[f]or purposes of . . . AS 23.30.180, permanent partial disability benefits includes permanent partial impairment benefits paid under AS 23.30.190."[16] The Board adjusted the PPI amounts for inflation, denied Alaska Airlines' request to withhold more than 20% of benefits to recoup the overpayment, and denied both interest and further attorney's fees to Darrow.

Darrow appealed to the Commission, challenging the Board's decision regarding both offsets. She also filed suit in the superior court challenging the Board's regulation, evidently contending that it was not consistent with the statute.[17] The director of the Division of Workers' Compensation intervened in the Commission appeal for purposes of addressing the regulatory issue. The lawsuit was stayed and, according to the State, later dismissed.

The Commission reversed the Board's calculation of the SSDI offset and, using a different legal analysis, decided the PPI payments could be recouped under a different part of the Act. The Commission calculated the same amount as Darrow for the

---

[15]    The Board looked to 6 ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW § 80.05 (Matthew Bender, Rev. Ed. 2015).

[16]    8 AAC 45.134(c).

[17]    The record contains no pleadings from the court case.

SSDI offset, even though its analysis was somewhat different from hers.[18] Under the Commission's analysis, the average weekly wage the parties agreed to under AS 23.30.220(a)(10) was the average weekly wage to be used in calculating the offset. It noted Alaska Airlines' argument that the statutory language of AS 23.30.225(b) said "average weekly wages at the time of injury." But it interpreted the legislature's 1995 amendment of AS 23.30.220(a)[19] to include wages calculated under *any* subsection of AS 23.30.220(a), including subsection .220(a)(10), within the definition of average weekly wages under AS 23.30.225(a). The Commission thought that to interpret the statute otherwise would lead to an unfair result: Darrow would receive less in combined SSDI and PTD than she would in PTD alone. The Commission observed that the statutory language permitted an offset, but that Alaska Airlines' argument would result in a reduction of total benefits.

Next the Commission decided that Darrow's PPI did not now meet the terms of AS 23.30.190(a) — "impairment partial in character but permanent in quality, and not resulting in permanent total disability" — and thus the earlier PPI payments were effectively an advance payment of PTD. It allowed Alaska Airlines to offset the PPI amount under AS 23.30.155(j),[20] and ordered that "Alaska Airlines is entitled to withhold 20% of [Darrow's] permanent total disability payments, without regard to AS 23.30.180

---

[18]    The parties also disputed how the Board should apply the maximum benefit cap, but neither party has raised that issue before us. We therefore do not address it.

[19]    This amendment added subsection .220(a)(10) and allowed the Board discretion to vary gross weekly earnings when an employee was eligible for PTD. Ch. 75, § 9, SLA 1995.

[20]    Alaska Statute 23.30.155(j) permits an employer to offset overpayments or advance payments "by withholding up to 20 percent . . . of unpaid installments of compensation."

and without regard to 8 AAC [45].134." It did not address whether the amount of PPI to be withheld should be adjusted for inflation,[21] and it decided it lacked jurisdiction to determine whether 8 AAC 45.134 (c) was valid.

Alaska Airlines appeals, and Darrow cross-appeals.

## III. STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission we review the Commission's decision rather than the Board's.[22] We apply our independent judgment to questions of "statutory interpretation requiring the application and analysis of various canons of statutory construction."[23] "We exercise our independent judgment in determining the validity of an administrative regulation . . . ."[24] "Regulations are presumptively valid and will be upheld as long as they are 'consistent with and reasonably necessary to implement the statutes authorizing [their] adoption.' "[25]

---

[21] Alaska Statute 23.30.155(j) does not mention adjusting earlier payments for inflation as AS 23.30.180 does.

[22] *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014) (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010)).

[23] *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903-04 (Alaska 1987)).

[24] *Lauth v. State*, 12 P.3d 181, 184 (Alaska 2000) (citing *Bd. of Trade, Inc. v. State, Dep't of Labor, Wage & Hour Admin.*, 968 P.2d 86, 89 (Alaska 1998)).

[25] *State, Bd. of Marine Pilots v. Renwick*, 936 P.2d 526, 531 (Alaska 1997) (alteration in original) (citation omitted) (quoting *Chevron U.S.A. v. LeResche*, 663 P.2d 923, 927 (Alaska 1983)).

## IV. DISCUSSION

### A. The Commission Correctly Calculated The Social Security Disability Offset.

The main question presented by the lead appeal is the proper method of calculating an offset for Social Security disability (SSDI) payments when the amount of permanent total disability (PTD) paid is based on income calculated under AS 23.30.220(a)(10). This question requires consideration of two statutes, AS 23.30.220 and AS 23.30.225. We construe statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[26] We do not strictly apply the plain meaning rule but construe statutes using a sliding scale approach, under which "the plainer the language of the statute, the more convincing contrary legislative history must be."[27]

Alaska Airlines sought an offset under AS 23.30.225(b), which provides that when an employee gets SSDI

> for an injury for which a claim has been filed under this chapter, weekly disability benefits payable under this chapter shall be offset by an amount by which the sum of (1) weekly benefits to which the employee is entitled under 42 U.S.C. 401 – 433, and (2) weekly disability benefits to which the employee would otherwise be entitled under this chapter, exceeds 80 percent of the employee's average weekly wages at the time of injury.

Calculation of an offset thus depends on the following amounts: weekly SSDI, weekly workers' compensation benefits, and "the employee's average weekly wages at the time

---

[26] *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[27] *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005) (quoting *Alaskans for Efficient Gov't Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

of injury." The parties' main dispute centered on the meaning of the phrase *average weekly wages at the time of injury*. Alaska Airlines argued that this phrase required using $668.98 as Darrow's average weekly wage because that represented her wages in 1996, the time of her injury. Darrow, in contrast, contended that $1,390, the adjusted weekly wage to which the parties had agreed under AS 23.30.220(a)(10), was the correct amount. Darrow based her argument in part on our interpretation of AS 23.30.225 and .220 in *Underwater Construction, Inc. v. Shirley*.[28]

The Commission considered *Shirley* and the 1995 amendments to AS 23.30.220. It concluded that the average weekly wage at the time of injury could be calculated under any subsection of AS 23.30.220, including subsection .220(a)(10). We agree with the Commission.

In *Shirley* the employee asked us to interpret the phrase *average weekly wages* in AS 23.30.225(b) *in pari materia*[29] with the phrase *average current earnings* in the Social Security Act.[30] We declined to do so.[31] After deciding that *average weekly wages* in AS 23.30.225(b) was ambiguous, we considered the language of the Act in 1977, when AS 23.30.255(b) was added.[32] We observed that at that time *average weekly wages* was also the term used in AS 23.30.220, making the phrase "the basis for

---

[28]     884 P.2d 150 (Alaska 1994).

[29]     *In pari materia* is a canon of statutory construction, meaning that statutes relating to the same subject may be construed together, so that inconsistencies in one may be resolved by looking to another statute on the same subject. *In pari materia,* BLACK'S LAW DICTIONARY (10th ed. 2014).

[30]     *Shirley*, 884 P.2d at 155.

[31]     *Id.*

[32]     *Id.* at 153-54.

computing compensation."[33] We noted that even though the legislature had changed the language of AS 23.30.220 in 1983, the method used to calculate a weekly wage rate in the 1977 and 1983 versions of the statute remained "very similar."[34] From this we concluded that *average weekly wages* in AS 23.30.225(b) was "the same as 'gross weekly earnings' in AS 23.30.220(a)(1)," the subsection used to calculate the employee's compensation in that case.[35]

Alaska Airlines asserts that AS 23.30.225(b)'s use of the phrase *at the time of injury* only permits the use of Darrow's income from 1996, the year of her injury. This argument ignores the use of the same phrase in AS 23.30.220, which currently provides that compensation is calculated "on the basis of an employee's spendable weekly wage *at the time of injury*."[36] (Emphasis added.) In spite of this language, AS 23.30.220(a)(10) allows the Board to set a different wage rate for certain workers who are permanently and totally disabled.

Historically AS 23.30.220 has permitted the Board some discretion in setting the wage used as a base for compensation calculation. When AS 23.30.225(b) was added to the Act in 1977, for example, former AS 23.30.220 permitted the Board to set a worker's average weekly wages at the time of injury by considering wages for

---

[33]     *Id.* at 153 (quoting former AS 23.30.220 (1977)).

[34]     *Id.* at 153-54 (quoting former AS 23.30.220(2) (1977) and former AS 23.30.220(a)(1) (1983)).

[35]     *Id.* at 154. We also observed that the version of AS 23.30.220 in effect when Shirley was injured was unconstitutional. *See id.* at 151 n.2 (citing *Gilmore v. Alaska Workers' Comp. Bd.*, 882 P.2d 922 (Alaska 1994)).

[36]     Spendable weekly wages are based on gross weekly earnings and serve as the basis for calculating compensation under the Act. *See* AS 23.30.220(a). AS 23.30.220(a)(10) allows the Board to vary an employee's gross weekly earnings when an employee is PTD, which changes the amount of compensation.

similar jobs if the Board did not think wages could be "fairly calculated" under other subsections.[37] And the same legislation that adopted the SSDI offset included a provision that "the average weekly wage is that most favorable to the employee," considering the wages an employee had earned in the previous three years.[38] These variations in permissible calculations of a worker's "average weekly wage . . . at the time of the injury"[39] suggest that the legislature understood and intended that at times the wage used to calculate compensation would not be precisely the same wage that a worker was in fact earning at the time of the injury.

The legislature amended AS 23.30.220 in 1995, adding subsection .220(a)(10), the provision the parties used to calculate Darrow's weekly earnings for purposes of computing her PTD amount.[40] The legislature is presumed to know that *Shirley* construed the term *average weekly wages* in .225(b) as meaning the

---

[37] Former AS 23.30.220(3) (1977). *See also* former AS 23.30.220(a)(2) (1984) (permitting Board to determine gross weekly earnings "by considering the nature of the employee's work and work history" if wages could not be "fairly calculated" under other statutory subsection).

[38] Ch. 75, § 10, SLA 1977, codified at former AS 23.30.220(2) (1978).

[39] Former AS 23.30.220 (1977).

[40] Ch. 75, § 9, SLA 1995. This amendment was intended to address the constitutional issues discussed in *Gilmore*, 882 P.2d at 929. *See* Minutes, House Labor & Commerce Comm., Hearing on House Bill (H.B.) 237, 19th Leg., 1st Sess., No. 397-469 (Mar. 15, 1995) (statement of Rep. Eldon Mulder, Prime Sponsor of H.B. 237). Discussions in hearing minutes specifically related to AS 23.30.220(a)(10) were mainly about expanding its use to other benefits in addition to PTD. Minutes, House Judiciary Comm., Hearing on H.B. 237, 19th Leg., 1st Sess., Tape 95-40, Side B No. 250-375 (Mar. 31, 1995) (statement of Rep. David Finkelstein); Minutes, Senate Judiciary Comm., Hearing on H.B. 237, 19th Leg., 1st Sess., No. 555-Tape 95-28, Side B (May 3, 1995).

same thing as *gross weekly earnings* in .220(a).[41] This presumption supports the Commission's conclusion that when the legislature amended the statute in 1995, "it in effect wrote . . . the phrase 'as determined under AS 23.30.220(a)(1)-(10)' into [AS 23.30.225(b)]."

Alaska Airlines argues that our statement in *Shirley* that "[t]he general purpose of the bill under which AS 23.30.225(b) was enacted was to make benefits more affordable to employers in Alaska"[42] supports its construction of the statute. It further contends that Darrow's case is analogous to *Louie v. BP Exploration (Alaska), Inc.*, where we recognized that the legislature chose in 1988 to lower compensation for some workers, even if it caused those workers hardship.[43] But the legislative history of AS 23.30.225(b) shows that it supports the Commission's construction of the statute, not Alaska Airlines'.

Alaska Statute 23.30.225(b) was enacted in 1977 as part of Senate Bill (S.B.) 131, but subsection .225(b) was first introduced as a separate bill in the House.[44] Initially S.B. 131 only dealt with offsets for Social Security retirement and survivors

---

[41] *Joseph v. State*, 293 P.3d 488, 492 (Alaska App. 2012) ("[T]he legislature is presumed to be aware of pertinent court decisions when it amends a statute." (citing *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 633 n.33 (Alaska 2011))).

[42] *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 154 (Alaska 1994) (emphasis omitted).

[43] 327 P.3d 204, 208-09 (Alaska 2014).

[44] 1977 House Journal 775; House Bill (H.B.) 437, 10th Leg., 1st Sess. (Apr. 5, 1977), Alaska Leg. Bill File No. 33.

benefits;[45] but the House Labor and Management Committee amended it to include the House bill[46] because both bills related to Social Security offsets.[47]

When S.B. 131 was initially introduced, the governor identified one of its general purposes as "making benefits more affordable" to employers,[48] a purpose we noted in *Shirley*.[49]  While the House Labor and Management Committee anticipated that its bill would decrease workers' compensation insurance premiums and thereby save employers money, those savings were to come from shifting costs to the federal government.  The House measure was meant to take advantage of a then-existing "loophole" in federal law that permitted states to offset workers' compensation payments with SSDI when an injured worker recieved both forms of compensation, thereby shifting part of the cost of supporting a disabled worker to the federal government.[50]  One

---

[45]     S.B. 131, 10th Leg., 1st Sess. (Feb. 4, 1977).  The reduction of workers' compensation related to retirement and survivors benefits is now codified at AS 23.30.225(a).

[46]     Minutes, House Labor & Mgmt. Comm. Hearing on S.B. 131, 10th Leg., 1st Sess., Alaska Leg. Microfiche Collection No. 89 (Apr. 26, 1977).

[47]     Statement of Rep. Larry Carpenter, Tape 21 at 55:50-57:08, Hearing on S.B. 131 Before the House Labor & Mgmt. Comm., 10th Leg., 1st Sess. (Apr. 26, 1977).

[48]     1977 Senate Journal 203.

[49]     *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 154 (Alaska 1994).

[50]     Statements of Rep. Larry Carpenter and Mr. Theodore Berns, Tape 21 at 56:25-57:18, 58:14-59:40, Hearing on S.B. 131 Before the House Labor & Mgmt. Comm., 10th Leg., 1st Sess. (Apr. 26, 1977).  According to *Larson's* the federal and state governments have used offsets to shift costs between the Social Security and workers' compensation systems.  *See* 14 ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW § 157.03[5] (Matthew Bender, Rev. Ed. 2015).  The federal government ultimately "enacted legislation effectively ruling out any future adoptions
(continued...)

witness told the committee that in "no case" would the proposed offset result in any decrease in payments to workers.[51] This witness presented a report that had been prepared for the Municipality of Anchorage showing hypothetical examples in which an employer would generally pay less in workers' compensation under the proposal.[52] This legislative history is a stark contrast to the history we discussed in *Louie*, which showed the legislature expressly chose to lower benefits for some workers at the same time it increased benefits for others.[53] Nothing in the legislative history of either the Senate or House proposals shows any intent to reduce benefits paid to injured workers; to the contrary, one argument in favor of the legislation was that it would give workers the benefit of the Social Security taxes they had paid.[54]

We have recognized that workers' compensation must balance two competing concerns. Wages must be calculated "to arrive at a fair approximation of [a]

---

[50]     (...continued)
of offsets at the state compensation end," *id.*, and state offsets can only be used if they were in effect as of February 18, 1981. 42 U.S.C. § 424a(d) (2012). Under the federal offset provision, combined benefits from SSDI and workers' compensation are capped at 80% of the worker's average current earnings; this provision is inapplicable to states with their own offset provisions. 42 U.S.C. § 424a.

[51]     Statement of Theodore Berns, Tape 21 at 59:40-59:48, Hearing on S.B. 131 Before the House Labor & Mgmt. Comm., 10th Leg., 1st Sess. (Apr. 26, 1977).

[52]     *Id.* at 60:28-61:42.

[53]     *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 208-09 (Alaska 2014).

[54]     Statement of Theodore Berns, Tape 21 at 58:50-59:37, Hearing on S.B. 131 Before the House Labor & Mgmt. Comm., 10th Leg., 1st Sess. (Apr. 26, 1977). Relatedly, the proposal to offset retirement benefits was capped at half of the Social Security benefits because the employer only contributed half the Social Security tax. Statement of Dick Block, Dir. of Ins., Tape CB21C5 at 13:25-14:03, Hearing on S.B. 131 Before the Senate Labor & Mgmt. Comm., 10th Leg., 1st Sess. (Mar. 3, 1977).

claimant's probable future earning capacity"[55] while at the same time, benefits must not be too generous for fear that an injured worker will not have an incentive to return to work.[56] The 1977 hearing testimony suggests that the offset legislation was meant to balance these goals: replacing enough income with enough money that an injured worker's standard of living would not be dramatically reduced but keeping benefits low enough to provide an incentive to return to work.[57] The federal Social Security offset provision had a similar purpose — ensuring that workers have an incentive to return to work and preventing the "erosion of state workers' compensation programs."[58] But if an injured worker returns to work for a long time before becoming completely disabled, using an earlier wage to set benefits can result in hardship.[59] Permitting an alternative method to calculate gross weekly earnings under AS 23.30.220(a)(10) ameliorates this

---

[55] *Peck v. Alaska Aeronautical, Inc.*, 756 P.2d 282, 286 (Alaska 1988) (quoting *Johnson v. RCA-OMS, Inc.*, 681 P.2d 905, 907 (Alaska 1984)).

[56] *See Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 273 (Alaska 1984) (agreeing "that the State has important interests in avoiding disincentives to rehabilitation and in creating incentives for injured workers to go back to work").

[57] Statement of Dick Block, Dir. of Ins., Tape CB21C5 at 12:30-13:03, Hearing on S.B. 131 Before the Senate Labor & Mgmt. Comm., 10th Leg., 1st Sess. (Mar. 3, 1977).

[58] *Freeman v. Harris*, 625 F.2d 1303, 1306 (5th Cir. 1980) (citing *Hearings on H.R. 6675 Before the Senate Comm. on Fin.*, 89th Cong., 1st Sess. 252, 259, 366, 540, 738-40, 892-97, 949-54, 990 (1965)). Evidently when the federal Social Security offset was repealed for several years, "data . . . showed that in the majority of the states, the typical worker who was receiving workers' compensation and federal disability benefits actually received more in benefits than his pre-disability take-home pay." *Id.* (citing *Hearings on H.R. 6675 Before the Senate Comm. on Fin.*, 89th Cong., 1st Sess. 151 (1965)).

[59] *See Peck*, 756 P.2d at 287-88 (construing statute to avoid an unfair result).

hardship. Construing the Act as Alaska Airlines requests would effectively block AS 23.30.220(a)(10)'s calculation of an alternative wage.

Alaska Airlines also argues that we should consider AS 23.30.225(b) a more specific provision than AS 23.30.220 and urges us to apply the principle that the more specific statutory provision should control over the general one when the provisions cannot be harmonized.[60] It does not explain why the provisions cannot be harmonized or why AS 23.30.225(b) is more specific. The Commission thought the two provisions could be harmonized by interpreting *average weekly wages at the time of injury* in AS 23.30.225(b) as including gross weekly earnings calculated under any subsection of AS 23.30.220(a).

We agree with the Commission that the statutes can be harmonized; therefore the rule that specific provisions govern more general ones does not apply.[61] When the offset provision was adopted, the average weekly wage under AS 23.30.220 did not have to correspond to the exact wage the worker was earning at the time of injury, yet the legislature used the same phrase in AS 23.30.225(b) that it used in AS 23.30.220.[62] This supports the Commission's conclusion that the two provisions can be harmonized. Additionally, in *Shirley*, we interpreted the phrase *average weekly wages* in AS 23.30.225(b) as "refer[ring] to the measure of historical earning capacity used to

---

[60] *See In re Hutchinson's Estate*, 577 P.2d 1074, 1075 (Alaska 1978) ("[W]here one section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible; but if there is a conflict, the specific section will control over the general.").

[61] *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 n.20 (Alaska 2011) (citing *Nat'l Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 817-18 (Alaska 1982)).

[62] Former AS 23.30.220(3) (1977).

calculate compensation" — that is, gross weekly earnings as determined by AS 23.30.220.[63]

Here Alaska Airlines' construction of the statute results in Darrow getting less per week in combined workers' compensation benefits and SSDI — $535.18 — than she would get in workers' compensation alone — $668.98 — based upon the stipulated amount of $1,390 as her weekly wage. While the Commission's interpretation does not give Alaska Airlines an offset as long as Darrow gets SSDI, the amount Darrow receives under the Commission's analysis is still substantially less than the adjusted weekly wage the parties stipulated to. The Commission's construction of the Act is consistent with both the purpose of keeping an employee's benefits below wages and providing adequate compensation. We hold that the Commission correctly construed and applied AS 23.30.220(a) and AS 23.30.225(b).

**B.    The Commission Erred In Allowing An Offset For PPI.**

Darrow's cross-appeal also presents an issue of statutory construction and requires us to examine the legislature's use of the terms *disability* and *impairment* in the context of workers' compensation. Alaska Statute 23.30.180(a) provides in part, "If a permanent partial disability award has been made before a permanent total disability determination, permanent total disability benefits must be reduced by the amount of the permanent partial disability award, adjusted for inflation, in a manner determined by the board." The statutory definition of *disability* is found in AS 23.30.395(16): " 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

Alaska Statute 23.30.190(a) sets out a formula for paying compensation "[i]n case of impairment partial in character but permanent in quality, and not resulting

---

[63]    *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 154 (Alaska 1994).

in permanent total disability." To determine "the existence and degree of permanent impairment," AS 23.30.190(b) requires the use of a specific medical reference, the *AMA Guides*. Nothing in AS 23.30.190 links compensation for a permanent impairment to an inability to earn wages.

Before 1988, AS 23.30.190 authorized payment of permanent partial *disability* compensation, with payments based on the type of permanent injury and the worker's wage-earning capacity.[64] In 1988 the legislature repealed and reenacted AS 23.30.190, replacing permanent partial disability with permanent partial *impairment* benefits.[65] At the same time, the legislature amended AS 23.30.180(a) to include the provision mandating reduction of PTD by the amount of previously paid permanent partial *disability*.[66] The legislature also made both of these provisions applicable only to injuries that happened on or after July 1, 1988.[67]

Relying principally on AS 23.30.180(a) and the regulation it had promulgated to implement it, 8 AAC 45.134,[68] the Board permitted Alaska Airlines to recover the $40,500 it had previously paid Darrow in PPI, plus an additional $11,338 to adjust the prior awards for inflation. The Commission, in contrast, interpreted

---

[64] Former AS 23.30.190 (1984).

[65] Ch. 79, § 34, SLA 1988.

[66] *Id.* § 31.

[67] *Id.* § 48.

[68] 8 AAC 45.134(c) provides, "For purposes of (b) of this section and AS 23.30.180, permanent partial disability benefits includes permanent partial impairment benefits paid under AS 23.30.190." 8 AAC 45.134(b) provides, "In accordance with AS 23.30.155(j), the employer may reduce permanent total disability benefits to recover permanent partial disability benefits previously paid by the employer for the same injury."

AS 23.30.190(a) and AS 23.30.155(j) and decided that Alaska Airlines could recover the PPI as an overpayment of PTD "without regard to AS 23.30.180 and without regard to 8 AAC [45].134." It did not mention the additional $11,338.

Darrow argues that the Commission misinterpreted the Act by allowing Alaska Airlines to offset the PPI it had previously paid her against her PTD award. Her argument is based on statutory language: AS 23.30.180(a) requires an offset when "a permanent partial *disability* award has been made before a permanent total disability determination" (emphasis added) — not a permanent partial *impairment* award — yet permanent partial disability as a benefit was removed from the Act in 1988.[69] Darrow contends that *disability* and *impairment* are distinct concepts. She points out that a person may be disabled from working without having a permanent impairment,[70] and conversely, a person who has a permanent impairment may not be disabled from working, as illustrated by Darrow herself. Darrow maintains that the Board correctly recognized that PPI was intended to compensate for a separate loss related to a physical harm, rather than wage loss from an injury, which would be a disability benefit.

Darrow points to a different statutory subsection, AS 23.30.041(k), which concerns an employee's eligibility for reemployment benefits, to show that the legislature understood that PPD and PPI are in fact different. In that subsection the legislature explicitly differentiated between PPD and PPI.[71] She concludes that AS 23.30.180 does

---

[69] Ch. 79, § 34, SLA 1988.

[70] For example, in *Rydwell v. Anchorage School District*, 864 P.2d 526, 529-30 (Alaska 1993), the parties agreed the injured worker could not return to her former job even though she had a 0% impairment rating.

[71] Alaska Statute 23.30.041(k) provides in part, "If permanent partial disability or permanent partial impairment benefits have been paid in a lump sum before
(continued...)

not authorize an offset against her PTD for PPI. Darrow argues that the Commission's construction of AS 23.30.190 could permit an employer a double recovery of PPI when AS 23.30.041(k) had been used to suspend benefits. Both Darrow and Alaska Airlines currently take the position that *permanent partial disability* in AS 23.30.180(a) refers to the permanent partial benefit that existed before the 1988 statutory amendments.

Alaska Airlines asks us to affirm the Commission's interpretation of the Act allowing it to recoup PPI under AS 23.30.190(a) and .155(j). Alaska Airlines argues that the 1988 addition of the offset provision to subsection .180(a) "only . . . related to injuries occurring prior to the statutory changes . . . which changed permanent partial disability benefits to permanent partial impairment benefits." Therefore, it continues, after the 1988 amendments to the Act, "neither the credit provision of § .180 nor the board's regulation in 8 AAC 45.134(c) is required to address recovery of PPI paid when an employee is rendered permanently and totally disabled." It does not mention the Board's adjustment of the PPI amount for inflation or the Commission's failure to address it.

The State supports the Commission's interpretation of the statute, arguing that Darrow "is not entitled to PPI benefits for her knee injury because her impairment resulted in permanent total disability." The State relies on the plain meaning of AS 23.30.190(a) — which refers to PPI as not resulting in permanent total disability — and the common meaning of *overpayment*, but also maintains that the Board's regulation is consistent with both AS 23.30.180 and .190 and "harmonizes the two statutes." It contends that the concepts of *disability* and *impairment* are distinct but related, as shown

---

[71]    (...continued)
the employee requested or was found eligible for reemployment benefits, payment of benefits under this subsection is suspended until permanent partial disability or permanent partial impairment benefits would have ceased . . . . "

by language in AS 23.30.180(a) that classifies a worker who suffers certain impairments as presumptively permanently and totally disabled. It argues that not requiring an offset would overcompensate Darrow. At oral argument before us the State postulated that, because both statutes took effect on the same date, the statutory language in AS 23.30.180(a) was a drafting error and that the legislature meant to use *impairment* rather than *disability* in the statutory language.

As noted, the Commission's decision relied solely on AS 23.30.190(a) and AS 23.30.155(j) to permit Alaska Airlines' recovery of previously paid PPI and failed to explore the meaning of AS 23.30.180(a) and its interaction with AS 23.30.190(a). The Commission effectively wrote out of the statute AS 23.30.180(a)'s provision for recovery of previously paid PPD by saying that "Alaska Airlines is entitled to withhold 20% of [Darrow's] permanent total disability payments, without regard to AS 23.30.180 and without regard to 8 AAC [45].134."

Alaska Airlines asks us to ignore AS 23.30.180(a), the Board's regulation, and the Board's decision applying that statute and regulation, narrowing its focus to the statutory subsections relied on by the Commission. Although we review the Commission's decision, not the Board's,[72] when construing a statute, "we must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious whole."[73] "When a statute or regulation is part of a larger framework or regulatory scheme, even a seemingly unambiguous statute must

---

[72] *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014) (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010)).

[73] *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007) (quoting *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999)).

be interpreted in light of the other portions of the regulatory whole."[74] We decline to ignore the relevant statutory context and consider AS 23.30.190(a) and .155(j) in isolation to decide whether Alaska Airlines was entitled to an offset for PPI it had previously paid Darrow, because that analysis ignores other parts of the statute as well as the Board's regulation.

### 1. Statutory language and prior interpretation of *disability*

As set out above, AS 23.30.180(a) permits an offset for permanent partial *disability* when an employee later becomes permanently and totally disabled, and AS 23.30.190(a) allows an award of PPI "[i]n case of *impairment* partial in character but permanent in quality, and not resulting in permanent total disability." (Emphasis added.) Whether the Act authorizes an employer to reduce PTD by the amount it earlier paid as PPI is not clear from the statutory language.

In *Rydwell v. Anchorage School District* we considered the difference between *disability* and *impairment* in the context of reemployment benefits under AS 23.30.041.[75] We distinguished between these two concepts, observing that "Alaska's statutory scheme does not use the *AMA Guides* to determine *disability*, which requires a discretionary analysis considering incapacity in relation to employment potential."[76] Instead the Act uses the *AMA Guides* "to provide a predictable standard for *impairment*, which measures the employee's absolute physical capacity."[77] Because the legislature conditioned receipt of reemployment benefits on having an impairment, not a disability,

---

[74] *Millman v. State*, 841 P.2d 190, 194 (Alaska App. 1992), *quoted in Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc.*, 21 P.3d 344, 351 (Alaska 2001).

[75] 864 P.2d at 530-31.

[76] *Id.* at 531 (emphasis in original).

[77] *Id.* (emphasis in original).

we rejected the argument that an employee's inability to return to a previous employment was a basis to find eligibility for reemployment benefits.[78]  And in response to a dissenting opinion, we pointed out that the employee might be eligible for PTD even if not eligible for reemployment benefits under our analysis.  We noted that the *AMA Guides* "cautions against a ' "one-to-one" translation of impairment to disability.' "[79]

The language of AS 23.30.180(a) and our prior construction of *impairment* do not permit the two terms, *impairment* and *disability*, to be used interchangeably.  But that is the effect of the regulation on which the Board relied to decide this case.  The legislature requires that "[t]echnical words and phrases and those that have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning."[80]  Alaska Statute 23.30.180(a) uses a specifically defined term, *disability*, which ties eligibility for that benefit to the inability to earn wages and which we have interpreted to be distinct from *impairment*.

Alaska Statute 23.30.190(a) authorizes payment of PPI "[i]n case of impairment partial in character but permanent in quality, and not resulting in permanent total disability."  We apply common rules of grammar to construe statutory language.[81]  The statutory language and sentence structure suggest that the phrase *and not resulting in permanent total disability* was intended to limit PPI to workers whose disability did

---

[78]     *Id.* at 528-31.

[79]     *Id.* at 531 (quoting *id.* at 532 (Compton, J., dissenting)).

[80]     AS 01.10.040(a).

[81]     *State v. Fyfe*, 370 P.3d 1092, 1099 (Alaska 2016) (citing AS 01.10.040(a); *Emp't Sec. Comm'n v. Wilson*, 461 P.2d 425, 428 (Alaska 1969)) (construing statutory language in accordance with the common rules of grammar); *see also Wilson*, 461 P.2d at 428 & n.5 (citing punctuation rule from dictionary in statutory construction).

not fall under AS 23.30.180, which presumes that certain losses render a worker permanently and totally disabled.[82] The phrase *and not resulting in permanent total disability* is set off with commas, indicating it is a separate, coordinate requirement for an injured worker to qualify for PPI.[83] When Darrow was evaluated for impairment benefits, her impairment had to meet two distinct requirements — it had to be "partial in character but permanent in quality" and it could not "result[] in permanent total disability." It is uncontested that Darrow met both conditions when she was found eligible for PPI. The statutory language does not indicate that a worker who is eligible for PPI when rated should be retroactively classified as ineligible for PPI if years later the worker becomes permanently and totally disabled. And if AS 23.30.190(a) has the meaning the Commission said it has, there was no need for the Board to promulgate the regulation it used to allow the offset in this case.[84]

The provision in subsection .180(a) authorizing recovery of the amount of a PPD award from a PTD award was added to the Act in 1988 as part of the same legislation that replaced permanent partial *disability* compensation with permanent partial *impairment* compensation.[85] Alaska Airlines' and Darrow's theory that AS 23.30.180(a) was intended to allow recovery of PPD awards made under the prior version of the Act has some logic because when the 1988 amendments were enacted, we had not considered or decided whether an employee who received PPD benefits could

[82] AS 23.30.180(a) sets out specific losses that "in the absence of conclusive proof to the contrary, constitute[] permanent total disability."

[83] *See* BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 1.7 (2d ed. 2006) (discussing use of comma for separate, coordinate adjectives and adverbs).

[84] *See* 8 AAC 45.134 (c) (allowing an employer to reduce permanent total disability benefits to recover previously paid PPI).

[85] Ch. 79, §§ 31, 34, SLA 1988.

also receive PTD benefits.[86]  But as we noted in *Wagner v. Stuckagain Heights*, and as the State acknowledges here, the legislature made the 1988 amendments to the Act applicable "only to injuries sustained on or after July 1, 1988."[87]  This restriction means that the provision requiring an offset for previously paid PPD cannot apply to cases in which the employee was already eligible for PPD benefits because that employee's injury had to have occurred before the amended statutes took effect.  As the State candidly admitted at oral argument before us, reading AS 23.30.180(a) together with the effective date of the amendments leads to the conclusion that the offset authorized under subsection .180(a) "effectively applies to no cases whatsoever" and raises the possibility that a drafting error of some type was made.

Two distinct drafting errors are possible.  The provision in subsection .180(a) could apply to PPD awards made under the previous version of the Act, as Alaska Airlines and Darrow contend.  If that was the legislature's intent, then it made a drafting error by not exempting that part of the legislation from the effective date in the bill.[88]  At oral argument before us, the State offered the alternative theory that use of *permanent partial disability* in subsection .180(a) was "a drafting mistake" — that the legislature "meant to say permanent partial impairment instead of permanent partial disability" because when the statute is "read in that light it makes perfect sense" and "it has meaning."  Because the statutory language is unclear, we consider the legislative history of the relevant parts of AS 23.30.180(a) and AS 23.30.190.

---

[86]     *Wagner v. Stuckagain Heights*, 926 P.2d 456, 457-58 (Alaska 1996).

[87]     Ch. 79, § 48, SLA 1988, *cited in Wagner*, 926 P.2d at 458 n.2.

[88]     The legislature provided that some sections of the 1988 amendments to the Act applied to injuries that happened before July 1, 1988.  *See* ch. 79, § 48, SLA 1988.

## 2.      Legislative history

The legislative history related to these statutory provisions yields few clues as to the legislature's intent.  The legislature received testimony and reports about the difference in the concepts of impairment and disability when it considered the change from permanent partial disability to permanent partial impairment.[89]  That legislative history shows some inconsistent use of the terms *disability* and *impairment* when referring to permanent partial compensation.[90]  The main reasons discussed for changing

---

[89]      *See, e.g.*, Governor's Oversight Group Report on SB 322/HB 352 10-11 (Mar. 12, 1988) (discussing difference between permanent partial benefits under old and new statutes), Alaska Leg. Microfiche Collection No. 5389.  *See also* Minutes, Joint House & Senate Labor & Commerce Comm., Hearing on H.B. 352/S.B. 322, 15th Leg., 2d Sess., No. 350-461 (Jan. 19, 1988) (statement of John H. Lewis), *in* Pat Wilson, Alaska Legislative History: Workers' Comp. SB 322 (1988) (compiled 1993) (explaining that primary concern for people with PPD is income loss); Letter from Philip M. Pallenberg to Senator Tim Kelly (Jan. 11, 1988), Alaska Leg. Microfiche Collection No. 5385 (expressing concern that impairment payment would not address effect of injury on ability to work).

Our decisions before 1988 distinguished between the "whole person" theory of compensation and the "earning capacity" theory.  *See, e.g.*, *Foster v. Wright-Schuchart-Harbor*, 644 P.2d 221, 222 n.2 (Alaska 1982).  *See also Hewing v. Alaska Workmen's Comp. Bd.*, 512 P.2d 896, 900 (Alaska 1973) (stating that basic concept of Alaska workers' compensation law is "that unscheduled partial disability awards should be made for economic loss, not for physical injury as such"); 6 ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW §§ 80.02-.07 (Matthew Bender, Rev. Ed. 2015) (discussing history and different theories of permanent partial benefits).

[90]      *See, e.g.*, H. Judiciary Comm., House CS for CS for Senate Bill No. 322 (L&C), Sectional Analysis, § 33, 15th Leg., 2d Session (Apr. 6, 1988) (labeling section about permanent partial benefits "Permanent Partial Disability" but noting difference in concepts), *in* Wilson, *supra* note 89; *see also* Memorandum from Shari Kochman to Rep. John Sund Re: All Proposed Amendments to SB 322 in All Testimony, Amendment #12 (Apr. 16, 1988), Alaska Leg. Microfiche Collection No. 5383 (stating that maximum "PPD" would be lowered).

the permanent partial benefit from permanent partial disability to permanent partial impairment were concerns about fairness in benefit levels and litigation costs related to unscheduled benefits.[91] Neither concern is particularly relevant to the issue before us.

The sentence in AS 23.30.180(a) at the heart of this case was added in the Senate Labor and Commerce Committee in February 1988,[92] apparently at the request of the Labor-Management Task Force on Workers' Compensation.[93] A memo to the committee chair from the Task Force proposed inserting the exact language now in AS 23.30.180(a) because "[c]urrent language" made it possible for "individuals [to] receive both a permanent partial disability award and permanent total disability payments" for the same injury, which was not the intent of the Task Force.[94] The memo does not clarify whether "[c]urrent language" referred to the pre-1988 statutory language or to the proposed legislation then under consideration.[95] But the same committee that inserted the relevant language in AS 23.30.180(a) had just two days earlier also inserted

---

[91] Minutes, Joint House & Senate Labor & Commerce Comm., Hearing on H.B. 352/S.B. 322, 15th Leg., 2d Sess., Tape 1, Nos. 350-461, 666 (Jan. 19, 1988) (statements of John H. Lewis and Jacquelyn McClintock), *in* Wilson, *supra* note 89. *See also* Sectional Analysis of Workers' Compensation Task Force SB 322 and HB 352, at 9, in Sen. Labor & Commerce Comm. Files, 15th Leg., 2d Sess. (1988), Alaska Leg. Microfiche Collection No. 5378 (stating intent "to redistribute benefits so that those employees who have a greater percentage of injury receive awards commensurate with their injuries").

[92] Working Draft, Committee Substitute for S.B. 332 (L&C), § 26, 15th Leg., 2d Sess. (Feb. 19, 1988), Alaska Leg. Microfiche Collection No. 5375.

[93] Memorandum from the Labor-Mgmt. Task Force on Workers' Comp. to Sen. Tim Kelly, Chair, Sen. Labor & Commerce Comm. ¶ 15 (Feb. 17, 1988), Alaska Leg. Microfiche Collection No. 5383.

[94] *Id.*

[95] *Id.*

the statutory language we construed in *Rydwell*, conditioning receipt of reemployment benefits on the existence of a permanent *impairment*.[96]

Throughout the time the legislature considered the 1988 amendments to the Act, the language in AS 23.30.190(a) that the Commission construed remained unchanged.[97] We are aware of no legislative history supporting the Commission's construction of this subsection to authorize a retroactive determination that an employee was never entitled to PPI. The Board recognized that the legislative history could support the construction of the statute Darrow advances — that the legislature intended to compensate injured workers for a distinct loss when it disconnected PPI from wage loss. The mere fact that the legislature limited receipt of PPI to those workers who were not permanently and totally disabled when rated does not mean the legislature intended to authorize the employer to recoup previously paid PPI if an employee was determined, years later, to be permanently and totally disabled. The compensation for impairment is awarded independent of earning capacity and for a different type of loss than the later permanent disability compensation, which depends on a worker's inability to earn wages.

The State asks us to apply the rule that an agency's longstanding interpretation of a statute should be given deference. But in this case the Commission's construction of the statute does not rely on or support the Board's regulation, which appears to be the longstanding construction to which the State refers. This difference in construing the statutes suggests that the Board did not interpret the Act as the

---

[96]     Working Draft, Committee Substitute for S.B. 332 (L&C), §7, 15th Leg., 2d Sess. (Feb. 17, 1988), Alaska Leg. Microfiche Collection No. 5375.

[97]     All of the versions of S.B. 322, 15th Leg., 2d Sess., are compiled in Wilson, *supra* note 89.

Commission did.[98] Had the Board interpreted AS 23.30.190 as the Commission did, the regulation would have been completely unnecessary.[99] Moreover, the Board did not cite AS 23.30.190 as authority for the regulation.[100] In addition, the Commission interpreted the statute using its independent judgment and ignored the regulation and its effect on Darrow's case.[101] Thus we see no reason why we should defer to the Board's interpretation of the Act as set out in the regulation when the Commission did not and we review the Commission's decision. In any event, a regulation cannot "justify a statutory interpretation not warranted by the statute's own language and legislative history."[102]

We agree with the State that the legislature likely made a drafting error in 1988. We faced a similar issue in *State, Department of Commerce, Community & Economic Development, Division of Insurance v. Alyeska Pipeline Service Co.*, where the State asked us to construe a statute with specific definitions in a manner that was

---

[98]     Alaska Administrative Code, Register 113 (April 1990).

[99]     The Notice of Proposed Changes related to the regulation said, "8 AAC 45.134 is proposed to be amended to specify how the employer may recover payment of permanent partial disability benefits when permanent total disability [benefits] are paid for the same injury, and to clarify the meaning of the term 'permanent partial disability benefits.' " Jim Sampson, Commissioner of Labor, Notice of Proposed Changes in the Regulations of the Alaska Workers' Compensation Board at 4 (Mar. 24, 1989).

[100]     Alaska Administrative Code, Register 113 (April 1990).

[101]     AS 23.30.180(a) together with the regulation allowed the Board to adjust the amount of PPI for inflation, increasing the amount Alaska Airlines could recoup by $11,338.

[102]     *Muller v. BP Expl. (Alaska) Inc.*, 923 P.2d 783, 792 (Alaska 1996). In *Wagner v. Stuckagain Heights*, 926 P.2d 456, 457 & n.1 (Alaska 1996), we applied independent judgment and de novo review to interpret former AS 23.30.180 and former AS 23.30.190.

inconsistent with those definitions.[103]   The separation of powers doctrine "prohibits this court from enacting legislation or redrafting defective statutes."[104]   When the legislature makes a drafting error, we do not rewrite the statute.[105]   The statutory language in AS 23.30.180(a) does not authorize an employer to reduce a PTD award when an employee has previously received PPI.  Alaska Statute 23.30.180(a) authorizes recovery of previously paid permanent partial *disability,* not *impairment*, benefits.   The Commission's construction of AS 23.30.190(a) fails to interpret that subsection in the context of the entire Act, including AS 23.30.180(a), and essentially eliminates the Board's regulation.  We therefore reverse the Commission's decision.

### C.     8 AAC 45.134(c) Is Invalid Because It Is Inconsistent With The Act.

Darrow's cross-appeal asks us to consider the validity of 8 AAC 45.134(c), which the Board applied to authorize Alaska Airlines' recovery of previously paid PPI and to increase the amount Alaska Airlines was entitled to recover for the PPI by adjusting for inflation.  Alaska Airlines does not directly address the validity of the regulation, arguing instead that its recovery of the overpayment does not rely on the regulation.   The State agreed with Alaska Airlines that under the Commission's construction of the statute, the regulation is not needed to recover previously paid PPI. But neither Alaska Airlines nor the State addressed whether PPI should be adjusted for inflation, as permitted by AS 23.30.180(a) and 8 AAC 45.134(c) and ordered by the Board.  And the State did not discuss why the Board would have adopted this regulation

---

[103]     262 P.3d 593, 597-98 (Alaska 2011).

[104]     *State v. Campbell*, 536 P.2d 105, 111 (Alaska 1975) (citing Alaska Const. art. II, § 1, art. IV, § 1), *overruled on other grounds by Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978).

[105]     *Alyeska Pipeline Serv. Co.*, 262 P.3d at 597-98.

if the Commission's construction of the statute were correct. The State argues that the regulation's validity is not properly before us because the superior court case was dismissed and the Commission determined it did not have jurisdiction to decide this issue. It concludes that "no ruling on the regulation's validity exists to support this Court's appellate jurisdiction."

Alaska Statute 23.30.129(a) gives a party the right to appeal a decision by the Commission to this court rather than the superior court. This is precisely the posture of the case before us; we therefore have jurisdiction. The question of the regulation's validity may not technically be ripe for review because the Commission correctly decided it lacked jurisdiction to determine a regulation's validity and, according to the State, the superior court case was dismissed.[106] But the parties briefed the merits of this issue before the Commission and this court, and our construction of the relevant statutes leaves no question as to the validity of 8 AAC 45.134 (c).

Because Darrow does not challenge whether the regulation was properly promulgated, we consider only "whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions" and "whether the regulation is reasonable and not arbitrary."[107] "We exercise our independent judgment in determining the validity of an administrative regulation . . . ."[108] A regulation that

---

[106]     *Cf. Nelson v. Municipality of Anchorage*, 267 P.3d 636, 644 (Alaska 2011) (deciding that as-applied constitutional challenge was not ripe because claim had not been litigated before Board or superior court).

[107]     *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971); *see also Lauth v. State*, 12 P.3d 181, 184 (Alaska 2000).

[108]     *Lauth*, 12 P.3d at 184.

"differs substantively from the clear language of the statute" is invalid.[109]   Here AS 23.30.180(a) specifies that an employer can reduce permanent total disability benefits by the amount of previously paid permanent partial disability benefits, adjusted for inflation.  While the State advances some policy arguments in support of the regulation, such a policy decision is for the legislature rather than for the Board or this court.[110] Because the regulation effectively rewrites AS 23.30.180(a), substituting *impairment* for *disability*, 8 AAC 45.134 (c) is not valid.

## V.    CONCLUSION

We AFFIRM that part of the Commission's decision reversing the Board's calculation of the Social Security disability offset and REVERSE that part of the Commission's decision permitting an offset for permanent partial impairment benefits. We therefore REMAND this matter to the Commission for further proceedings consistent with this opinion.

---

[109]    *Muller v. BP Expl. (Alaska) Inc.*, 923 P.2d 783, 792 n.9 (Alaska 1996); *see also Madison v. Alaska Dep't of Fish & Game*, 696 P.2d 168, 178 (Alaska 1985) (holding that agency regulation was invalid because it unduly restricted subsistence hunting, contrary to legislative intent).

[110]    *Fairbanks N. Star Borough Sch. Dist. v. NEA-Alaska, Inc.*, 817 P.2d 923, 926 (Alaska 1991).