*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RICHARD ROBERGE, | ) | |
| | ) | Supreme Court No. S-17897 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 20-010 |
| | ) | |
| ASRC CONSTRUCTION HOLDING | ) | O P I N I O N |
| COMPANY and ARCTIC SLOPE | ) | |
| REGIONAL CORPORATION, | ) | No. 7584 – February 4, 2022 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Eric Croft, The Croft Law Office, Anchorage, for Appellant. Matthew T. Findley, Ashburn & Mason, P.C., for Appellees. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

WINFREE, Chief Justice.

## I. INTRODUCTION

An Alaska Workers' Compensation Act provision sets maximum compensation rates for injured employees; another provision applies a cost-of-living ratio only to out-of-state recipients. The parties to this appeal dispute the sequence for

applying the provisions when calculating compensation. We conclude that the Act requires first applying the cost-of-living ratio and then applying the maximum rate.

## II. FACTS AND PROCEEDINGS

Richard Roberge injured his shoulder in May 2014 while working for ASRC Construction Holding Company; he continued working with accommodations until the job ended in November. Roberge then returned to his Idaho residence. ASRC paid him $834.85 weekly in temporary total disability compensation through mid-August 2015, calculated by adjusting the maximum weekly compensation rate by the prevailing cost-of-living adjustment (COLA) percentage for his residence.[1]

Roberge filed a written workers' compensation claim in November 2015, seeking the maximum allowable compensation rate of $1,143 weekly.[2] He later filed a compensation rate adjustment claim seeking the same relief. In November 2019 Roberge was released to work. The following month ASRC and Roberge settled all disputes except the maximum compensation rate adjustment claim through November 2019.

The parties stipulated to relevant facts and asked the Alaska Workers' Compensation Board to hear the rate adjustment claim on the written record.[3] The parties agreed that *Northern Construction v. James*, an earlier Alaska Workers'

---

[1]    *See* AS 23.30.175 (setting maximum rate and providing rules for calculating compensation when recipient resides out of state).

[2]    ALASKA WORKERS' COMP. DIV., BULL. NO. 13-04 (Dec. 2, 2013), https://labor.alaska.gov/wc/bulletins/13-04.pdf (establishing maximum weekly compensation rate at $1,143 relevant to this appeal).

[3]    *See* 8 Alaska Administrative Code (AAC) 45.070(b)(1)(B) (2021) (setting out procedure to request hearing on written record).

Compensation Appeals Commission decision,[4] "constrained" the Board; they asked the Board to apply *James* and deny Roberge's claim, allowing him to appeal to the Commission. The Board accepted the stipulated facts, noted *James* was precedential for the Board, noted ASRC had paid compensation in accordance with *James*, and denied Roberge's rate adjustment claim.

Roberge appealed to the Commission. The parties agreed *James* was "dispositive" and asked the Commission either to reconsider *James* or apply *James* and issue a final decision denying Roberge's claim, allowing him to appeal to us. The Commission decided not to reconsider the *James* decision and issued a final decision. Roberge appeals.

## III.   STANDARD OF REVIEW

In an appeal from the Commission, we review the Commission's decision and not the Board's.[5]  "We apply our independent judgment to questions of 'statutory interpretation requiring the application and analysis of various canons of statutory construction.' "[6]

---

[4]      AWCAC Dec. No. 251 at 18-19, 23 (July 25, 2018), https://labor.alaska. gov/WCcomm/memos-finals/D_251.pdf (interpreting relevant statutes as requiring cost-of-living adjustment after calculating maximum weekly compensation rate).

[5]      *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017).

[6]      *Id.* (quoting *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013)).

## IV. DISCUSSION

Commission decisions are binding precedent for the Board;[7] the Board acknowledged this, then applied *James*. Roberge contends that the Commission incorrectly construed the Act and that *James* thus is an erroneous decision. ASRC makes a novel statutory construction argument rather than asking us to construe the Act's provisions in accordance with *James*. The parties agreed that if Roberge's argument prevailed we should both overrule *James* and reverse the Commission's decision in Roberge's case. We are persuaded by Roberge's argument.

### A. Statutory Construction Principles And Relevant Statutory Provisions

"We construe statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[8] "The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[9] "We give unambiguous statutory language its ordinary and common meaning, but the 'plain meaning rule' is not an exclusionary rule; we will look to legislative history as a guide to construing a statute's words."[10] "[W]e must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious

---

[7] AS 23.30.008(a); *see Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 45 (Alaska 2007) (construing AS 23.30.008(a) as meaning Commission decisions are legal precedent only for Commission and Board).

[8] *Darrow*, 403 P.3d at 1121.

[9] *Murphy v. Fairbanks North Star Borough*, 494 P.3d 556, 563 (Alaska 2021) (quoting *City of Valdez v. State*, 372 P.3d 240, 254 (Alaska 2016)).

[10] *Cora G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 461 P.3d 1265, 1277 (Alaska 2020) (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 74 (Alaska 2013)).

whole."[11]  We also "must presume 'that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous.' "[12]

Calculating an injured employee's compensation rate involves considering several statutory sections.  "Computation of compensation . . . shall be on the basis of an employee's spendable weekly wage at the time of injury."[13]  Spendable weekly wage is derived from an employee's gross weekly earnings.[14]  The legislature delegated to the Commissioner of Labor and Workforce Development the task of "annually prepar[ing] formulas that shall be used to calculate an employee's spendable weekly wage on the basis of gross weekly earnings, number of dependents, marital status, and payroll tax deductions."[15]  The Board currently uses an online benefit calculator to determine spendable weekly wage.[16]  Most statutory sections about indemnity benefits[17] set the

---

[11]    *Darrow*, 403 P.3d at 1127 (quoting *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007)).

[12]    *Progressive Cas. Ins. Co.*, 165 P.3d at 629 (quoting *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999)).

[13]    AS 23.30.220(a).

[14]    AS 23.30.220(b).  The legislature provided detailed instructions about calculating an employee's gross weekly earnings.  *See* AS 23.30.220(a)(1)-(9).

[15]    AS 23.30.220(b).

[16]    *Benefit Calculator*, ALASKA WORKERS' COMP. DIV., https://labor.alaska. gov/wc/benefitcalculator.htm (last visited Dec. 21, 2021).  The online benefit calculator will also generate a "Weekly Benefit" with certain inputs, but the Board's website does not fully detail how the amount is determined.  *Id.*

[17]    *See Murphy v. Fairbanks North Star Borough*, 494 P.3d 556, 563-64 (Alaska 2021) (explaining indemnity benefits are "cash benefits that compensate
(continued...)

compensation rate as a percentage of the employee's spendable weekly wage.[18]  A provision also establishes minimum and maximum compensation rates without regard to residence.[19]

Roberge's case involves only temporary total disability benefits, generally calculated at 80% of the spendable weekly wage.[20]  But as a high-wage earner Roberge falls under the maximum compensation rate provision, setting the rate at 120% of the statewide average weekly wage.[21]  Based on a statewide average weekly wage of $952.15, the 2014 maximum compensation rate is $1,143.[22]  But Roberge did not reside

---

[17]     (...continued)
employees for losses and expenses other than the cost of medical treatment"); *see also* AS 23.30.001(1) (expressing legislative intent that Act be interpreted "to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers").

[18]     *See, e.g.*, AS 23.30.180 (setting permanent total disability at 80% of spendable weekly wage).  Permanent partial impairment is an exception, usually paid as a lump sum equal to the product of a set monetary amount and a percentage of impairment as set out in AS 23.30.190.

[19]     AS 23.30.175(a).

[20]     AS 23.30.185 ("In case of disability total in character but temporary in quality, 80 percent of the injured employee's spendable weekly wages shall be paid to the employee during the continuance of the disability.").

[21]     AS 23.30.175(a) (defining maximum compensation rate as 120% of average weekly wage under AS 23.30.175(d) on injury date); AS 23.30.175(d) (setting out annual calculations for statewide average weekly wage).

[22]     ALASKA WORKERS' COMP. DIV., BULL. NO. 13-04 (Dec. 2, 2013), https://labor.alaska.gov/wc/bulletins/13-04.pdf.

in Alaska, and additional "rules apply to benefits payable to recipients not residing in the state at the time compensation benefits are payable," including a COLA.[23]

### B.  *Northern Construction v. James*

*James* presented a fact situation similar to this case.  James was injured while working in Alaska, returned to his Idaho residence, and received compensation.[24] His employer contended his compensation rate should be his Alaska compensation rate — the maximum rate — multiplied by the applicable COLA, but James argued he should receive the maximum rate, using the same calculation method Roberge uses here.[25]

The Commission began its *James* analysis by stating that AS 23.30.220 authorized the online benefit calculator:[26]  "Under [AS 23.30.220's] authority, the Division [of Workers' Compensation] has developed an online benefit calculator to aid

---

[23]  AS 23.30.175(b); two provisions are relevant to this appeal:

> (1) the weekly rate of compensation shall be calculated by multiplying the recipient's weekly compensation rate calculated under AS 23.30.180, 23.30.185, 23.30.190, 23.30.200, or 23.30.215 by the ratio of the cost of living of the area in which the recipient resides to the cost of living in this state;
>
>      . . . .
>
> (5) application of . . . this subsection may not result in raising a recipient's weekly compensation rate to an amount that exceeds the weekly compensation rate that the recipient would have received if the recipient had been residing in the state.

[24]  *N. Constr. v. James*, AWCAC Dec. No. 251, at 2-3 (July 25, 2018), https://labor.alaska.gov/WCcomm/memos-finals/D_251.pdf.

[25]  *Id.* at 3-5.

[26]  *Id.* at 10-11.

in arriving at the precise weekly compensation rate for each injured worker . . . ."[27] The Commission did not explain how AS 23.30.220's explanation for calculating an employee's spendable weekly wage also authorized calculating an employee's "precise weekly compensation rate."[28]

In the Commission's view, under AS 23.30.220 the online benefit calculator displaced the directive that an employer pay 80% of an employee's spendable weekly wage.[29] The Commission concluded that "the determination of what constitutes 80 percent of spendable weekly wage [under AS 23.30.185] has already been made by the [D]ivision and is assessed by utilizing AS 23.30.220, its authorized benefit calculator, and the maximum and minimum rates under AS 23.30.175."[30]

The Commission next considered AS 23.30.175, distinguishing two phrases — "weekly compensation rate"[31] and "weekly rate of compensation"[32] — as referring to different things.[33] The Commission decided that an employee's "weekly compensation

---

[27] *Id.* at 11.

[28] *Cf. id.* at 8, 11-12.

[29] *Id.* at 14 ("Only after an injured worker's compensation rate has been determined under AS 23.30.220 and AS 23.30.175, is it necessary to look at AS 23.30.185, AS 23.30.180, AS 23.30.190, or AS 23.30.200 to identify what kind of benefit is due . . . depending on where the employee is in the recovery process."). The Commission did not discuss the inclusion of AS 23.30.215 in AS 23.30.175(b)(1). *Cf. id.* at 12, 22.

[30] *Id.* at 14.

[31] AS 23.30.175(b)(1), (3)-(5).

[32] AS 23.30.175(a), (b)(1).

[33] *James*, AWCAC Dec. No. 251, at 18-19.

rate" first is calculated under AS 23.30.220; the employee's "weekly rate of compensation" then is determined by applying AS 23.30.175(a).[34]

Under the Commission's analysis, AS 23.30.175(b) requires that an out-of-state recipient's weekly compensation rate, derived from the online benefit calculator, be multiplied by the applicable COLA.[35] Although interpreting AS 23.30.175(b)(5) as applying only to an employee "whose compensation rate is not at the cap and who moves out of state," the Commission nonetheless relied on that provision's legislative history when interpreting the rest of AS 23.30.175(b)'s compensation rate rules.[36] The Commission decided that the COLA's purpose was "to provide a non-resident recipient with benefits equating to the cost of living where the recipient is living."[37] But the Commission did not consider whether AS 23.30.175(b)(5)'s language met that purpose, particularly for a recipient in a location with a higher cost of living than Alaska's.[38]

The Board applied *James* to Roberge's case because Commission decisions are binding precedent for the Board and the Commission.[39] The Department of Labor and Workforce Development published revised COLA information in 2019, and it also required applying the COLA in accordance with *James*.[40]

---

[34] *Id.* at 8, 11-12. The Commission did not explain how AS 23.30.220 authorized calculating the weekly compensation rate.

[35] *Id.* at 18-19, 23.

[36] *Id.* at 16-17.

[37] *Id.* at 12-13.

[38] *Id.* at 12-13, 17-18.

[39] *Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 45 (Alaska 2007).

[40] ALASKA WORKERS' COMP. DIV., BULL. NO. 19-09 (Dec. 10, 2019),

(continued...)

**C. Under AS 23.30.175(b) The COLA Ratio Applies Before The AS 23.30.175(a) Maximum Rate.**

The parties agree on a number of facts as well as some steps in the compensation rate calculation. They agree that the first step in calculating the compensation rate is determining the spendable weekly wage under AS 23.30.220 and that Roberge's spendable weekly wage is $2,190.98. They agree that the next step is multiplying spendable weekly wage by 80% under AS 23.30.185 and that 80% of $2,190.98 is $1,752.78. But the parties' analyses then diverge.

Roberge contends that the next step is multiplying $1,752.78 by the applicable COLA, and he quotes AS 23.30.175(b)(1)'s plain language that requires "multiplying the recipient's weekly compensation rate calculated under AS . . . 23.30.185 . . . by the ratio of the cost of living of the area in which the recipient resides to the cost of living in this state." The parties agree Roberge's COLA is 72.04% for 2017 through 2019; $1,752.78 multiplied by 72.04% is $1,262.70. Because that amount exceeds the applicable maximum compensation rate, Roberge argues that he is entitled to AS 23.30.175(a)'s $1,143 maximum rate.

ASRC agrees that AS 23.30.185 requires multiplying spendable weekly wage by 80% and that 80% of $2,190.98 is $1,752.78. But ASRC contends that Roberge's compensation first should be reduced to the $1,143 maximum rate under AS 23.30.175(a) and that $1,143 then should be multiplied by the COLA under AS 23.30.175(b)(1), resulting in a weekly $823.42 benefit.

**1. Statutory language**

The instructions in AS 23.30.175(b)(1) — without reference to AS 23.30.175(a) — require first calculating a recipient's weekly compensation rate

---

[40] (...continued)
https://labor.alaska.gov/wc/bulletins/19-09.pdf.

according to the relevant statutory section and then applying the COLA; the instructions do not refer to "Alaska," indicate that the base rate is the Alaska rate, or mention applying the maximum rate before applying the COLA. But the language in AS 23.30.175(a) is important because it sets the maximum compensation rate tied to Alaska's average weekly wage, not to Alaska's cost of living.

ASRC maintains that AS 23.30.175(b)(1)'s instructions must be read to require calculating the compensation rate that would be paid if the recipient resides in Alaska because the listed statutes apply only in Alaska. ASRC's argument relies on statutory amendments made decades ago, and at oral argument before us it contended there was no evidence the 1982 amendment first including the indemnity benefits list was a substantive change. We reject these arguments.

### a. 1980s amendments

Since statehood the Act has set a maximum compensation rate on temporary total disability,[41] but the Act has not always provided different rates for out-of-state recipients. In 1976 the legislature first authorized different compensation rate calculations for out-of-state recipients;[42] it set an out-of-state resident's rate at "the weekly grant he would have received if he resided in Alaska times the ratio of the average weekly wage of the state in which he resides and the average weekly wage of Alaska."[43] The 1976 statute had a maximum rate for recipients residing in Alaska.[44]

---

[41] *See* ch. 193, §§ 5(2), 7(2), SLA 1959 (setting maximum compensation rate for temporary total disability).

[42] Ch. 252, § 5(d), SLA 1976.

[43] Former AS 23.30.175(d) (1976).

[44] Former AS 23.30.175(a) (1976).

Taken together, the 1976 statutory language suggests that the maximum rate then applied before any adjustment for living out of state.

In 1982 the Act was amended to require that an out-of-state recipient's compensation rate "be calculated by multiplying the recipient's weekly compensation rate calculated in accordance with AS 23.30.180, 23.30.185, 23.30.190, 23.30.200, or 23.30.215 times the ratio of the average weekly wage of the jurisdiction in which the recipient resides to the average weekly wage of Alaska,"[45] but it did not remove the maximum compensation rate for recipients living in Alaska.[46]

ASRC contends that the 1982 amendment replacing the phrase "the weekly grant he would have received if he resided in Alaska" by listing the indemnity benefit statutory sections did not change the law's substance. ASRC asserts that the list in the current statute "is synonymous with" the replaced phrase and asks: "Where else would these named statutes apply?" But this argument is contrary to the basic statutory construction principle that statutory amendments change the law[47] unless they can be shown to be clarifications.[48] ASRC does not suggest that the pre-1982 statute, requiring

---

[45]     Ch. 93, § 17, SLA 1982.

[46]     Former AS 23.30.175(a) (1982).

[47]     *Torkko/Korman/Eng'rs v. Penland Ventures*, 673 P.2d 769, 773-74 (Alaska 1983) ("An amendment to an unambiguous statute is generally presumed to indicate a substantive change in the law." (footnote omitted) (citing *City of Anchorage v. Thomas*, 624 P.2d 271, 273 (Alaska 1981))); *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) ("When Congress amends legislation, courts must 'presume it intends [the change] to have real and substantial effect.' " (alteration in original) (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995))).

[48]     *Cf. Angelica C. v. Jonathan C.*, 459 P.3d 1148, 1157-58 (Alaska 2020) (holding that amendment responding to superior court's interpretation of statute was clarification and not amendment of statute).

a calculation of the rate the employee would receive as an Alaska resident, was ambiguous. And if in 1982 the legislature thought the phrase "the weekly grant he would have received if he resided in Alaska" needed clarification, not including the statutory maximum rate in a clarifying amendment would indicate a legislative understanding that the calculation did not include imposing the cap. If in 1982 the legislature thought the phrase "the weekly grant he would have received if he resided in Alaska" was not ambiguous and encompassed applying the maximum rate, then substituting the statutory list of indemnity benefit types without the maximum rate would indicate an intent to change the substantive law.

ASRC's argument about the 1982 amendments also fails to account for the legislature retaining a maximum rate applicable to in-state recipients.[49] We "presume the legislature is aware of other statutory sections on the same subject . . . when enacting legislation."[50] The legislature presumably was aware that previous statutory language included a maximum compensation rate and that the subsection setting that maximum rate was not part of the statutory list included in the amendment. Considered together, these statutory construction principles and the legislature's actions support a conclusion that in 1982 the legislature intended to exclude the maximum compensation rate subsection from the list of statutes applied before adjusting for out-of-state recipients.

After we held unconstitutional the use of a wage-based COLA ratio,[51] in 1988 the legislature repealed and reenacted AS 23.30.175; it changed the ratio used for adjusting an out-of-state recipient's compensation rate, but it did not amend the statutory

---

[49]     Former AS 23.30.175(a) (1982).

[50]     *Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1208 (Alaska 2018).

[51]     *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 267 n.1, 274 (Alaska 1984).

sections list used when calculating out-of-state compensation rates.[52] The legislature also made the statutory maximum benefit applicable to all workers' compensation recipients, not just those living in Alaska.[53]

Roberge points to the 1988 legislative history showing that the committee amending the bill to apply the maximum rate to all compensation recipients had information about the difference in cost savings when applying the COLA before and after the maximum.[54] In other words, although the committee considering the statutory language knew there might be ambiguity about when the maximum rate would apply, the committee did not amend the bill to include AS 23.30.175(a) in AS 23.30.175(b)(1)'s list. In light of previous statutory changes, we cannot see how the legislature's continued use in 1988 of the indemnity benefits list instead of the phrase "the weekly grant [an employee] would have received if he resided in Alaska" can demonstrate that the legislature understood these to be equivalent.

### b.    Application of *expressio unius est exclusio alterius*

As part of Roberge's plain language argument, he invokes the statutory construction principle *expressio unius est exclusio alterius*, which "is essentially an

---

[52]    *Compare* former AS 23.30.175(b)-(c) (1984) (requiring calculation of out-of-state recipient's compensation rate by applying ratio related to average weekly wage), *with* AS 23.30.175(b)(1), *and* ch. 79, § 30, SLA 1988 (requiring application of COLA).

[53]    Ch. 79, § 30, SLA 1988.

[54]    Memorandum from Chuck Caldwell, Chief, Rsch. & Analysis, to Jacque McClintock, Dir., Workers' Comp. Div. 3 (Feb. 22, 1988) (in File 16, Sen. Labor & Com. Comm. Files on S.B. 322, 15th Leg., 2d Sess. at 203-07 (1988)), http://www.akleg.gov/library/worker's%20comp/SB%20322%20(1988)/SL&C15%20SB%20322%20(File16).pdf.

application of common sense and logic"[55] and "establishes the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions.' "[56] He maintains that excluding AS 23.30.175(a) from the statutory list demonstrates legislative intent that it not be included, and he cites the 1988 legislative history information about differences in cost savings under each application priority as supporting his *expressio unius* argument.

ASRC repeats its assertion that calculation under any listed section "inherently includes application" of AS 23.30.175(a). ASRC minimizes the importance of the Division's input in 1988, arguing that information before one committee cannot be evidence of the whole legislature's intent.

"Where a statute expressly enumerates the things or persons to which it applies, we often invoke . . . *expressio unius est exclusio alterius*."[57] We have stated that this principle "is particularly compelling" when interpreting the Act, which "is purely statutory and without a basis in the common law."[58] Consistent with this principle, leaving AS 23.30.175(a) off the list of sections used to calculate an employee's compensation rate before applying the COLA implies that the legislature intended to exclude it.[59] The legislative history shows the drafters were aware they had a choice to

---

[55] *Puller v. Municipality of Anchorage*, 574 P.2d 1285, 1287 (Alaska 1978).

[56] *Ranney v. Whitewater Eng'g*, 122 P.3d 214, 218 (Alaska 2005) (quoting *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991)).

[57] *Id.*

[58] *Id.* at 218-19 (quoting *Croft*, 820 P.2d at 1066).

[59] *See Croft*, 820 P.2d at 1066 (inferring that inclusion of "specified remedy was intended to exclude other remedies for overcompensation").

include AS 23.30.175(a); its exclusion from the list supports a conclusion that the legislature did not intend to apply the maximum rate cap before the COLA.[60]

### 2. Purpose and legislative history

Under our sliding scale approach to statutory interpretation, "the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be" to guide our understanding of the statute.[61]

#### a. AS 23.30.175(a)

In 1988 the legislature repealed and reenacted AS 23.30.175,[62] changing the maximum compensation rate from a variable rate based on the average weekly wage applicable only to Alaska residents to a fixed weekly rate applicable to all recipients.[63] The legislature rewrote the minimum and maximum compensation benefit calculation with the specific intent of redistributing compensation dollars toward lower-paid

---

[60] *Cf. Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ("We have long held that the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.' " (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003))).

[61] *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

[62] Ch. 79, § 30, SLA 1988.

[63] *Compare* former AS 23.30.175(a) (1984), *with* former AS 23.30.175(a) (1988).

workers.[64] Legislative history indicates that the legislature anticipated minimal impact; one representative stated that only 11 "cases" exceeded the new maximum amount.[65]

In 2000 the legislature amended AS 23.30.175(a), returning to a variable maximum compensation rate tied to the state's average weekly wage.[66] The legislative history shows that the legislature recognized the 1988 compensation rates had eroded in value due to inflation; increasing the maximum weekly compensation rate and tying it to the average wage addressed those concerns.[67] The standard measure of inflation is based on consumer prices,[68] but the legislature did not sanction an increase in workers'

---

[64] *See, e.g.*, H. Judiciary Comm., Sectional Analysis, House C.S. for C.S. for S.B. 322, 15th Legis., 2d Sess. § 29 (Apr. 6, 1988), *in* PAT WILSON, ALASKA LEGISLATIVE HISTORY: WORKERS' COMP. SB 322 (1988) (compiled 1993) (hereinafter WILSON).

[65] Minutes, H. Fin. Comm., Hearing on House C.S. for C.S. for S.B. 322 (L&C), Tape HFC 88-73, side 1, 15th Leg., 2d Sess. (Apr. 29, 1988) (statement of Rep. John Sund), *in* WILSON, *supra* note 64. The $700 statutory cap on compensation remained in place until 2000. *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 207 (Alaska 2014).

[66] Ch. 105, § 15, SLA 2000. The maximum compensation rate was a variable amount tied to average weekly wage from 1975 until 1988. *See* former AS 23.30.175(a) (1975) (providing maximum compensation rate based on average wage).

[67] Minutes, H. Labor & Com. Comm., Hearing on H.B. 419, Tape 00-28, Side A, No. 2275, 21st Leg., 2d Sess. (Mar. 8, 2000) (testimony of Paul Grossi, Dir., Div. of Workers' Comp.); *id.* at Tape 00-28, Side B, No. 1163-1844; *id.* at Tape 00-28, Side B, No. 0217-0350 (testimony of Willie Van Hemert, Co-chair Alaska Labor-Mgmt. Ad Hoc Comm. on Workers' Comp.); *id.* at Tape 00-28, Side B, No. 0759 (testimony of Kevin Dougherty, Co-chair Alaska Labor-Mgmt. Ad Hoc Comm. on Workers' Comp.).

[68] *See id.* at Tape 00-28, Side B, No. 0217-0350 (testimony of Willie Van Hemert) (discussing use of Consumer Price Index as well as average wages in proposed amendments). The Consumer Price Index "is a measure of the average change over time
(continued...)

compensation benefits if the cost of living increased independently of wages. Legislative history from 2000 thus indicates an intent that the weekly compensation rate continue to correspond to employee income.

### b. AS 23.30.175(b)(1)-(4)

The only cost-of-living adjustment for compensation rates is in AS 23.30.175(b). Subsections (1)-(4) were adopted in 1988,[69] after our *Alaska Pacific Assurance Co. v. Brown* decision holding unconstitutional the rule adjusting an out-of-state recipient's compensation based on the local average weekly wage rather than the cost of living.[70]

We recognized in *Brown* that "the State has important interests in avoiding disincentives to rehabilitation and in creating incentives for injured workers to go back to work" and acknowledged that paying the full Alaska rate to an employee residing in a location with a much lower cost of living might "discourage a return to work" because the "unadjusted compensation benefits may in terms of real income be in excess of the actual wage" the employee could earn.[71] We decided that a COLA reduction based on

---

[68]  (...continued)
in the prices paid by urban consumers for a market basket of consumer goods and services." U.S. BUREAU OF LABOR STAT., CONSUMER PRICE INDEX, https://www.bls.gov/cpi/ (last visited Nov. 8, 2021).

[69]  Ch. 79, § 30, SLA 1988.

[70]  687 P.2d 264, 267 n.1, 274 (Alaska 1984); *see* H. Judiciary Comm., Sectional Analysis, House C.S. for C.S. for S.B. 322, 15th Legis., 2d Sess. § 29 (Apr. 6, 1988) (noting *Brown* decision's suggestions), *in* WILSON, *supra* note 64.

[71]  687 P.2d at 273.

the average wage "imposes a substantial penalty" on an employee's right to travel[72] and suggested that an adjustment that "equalize[d] the buying power of benefit dollars in each state" would more likely meet the means-to-end part of our equal protection test.[73]

The legislature relied on *Brown* in 1988 when rewriting AS 23.30.175(b) to address these concerns.[74] The legislature stated its intent "in amending AS 23.30.175 regarding benefits payable to recipients not residing in the state" to:

> (1) recognize the levels of workers' compensation benefits brought about by the high cost of living that exists in the state as compared to other localities;
>
> (2) increase the incentive to return to work; and
>
> (3) remove obstacles to the utilization of vocational rehabilitation that may be brought about by the payment of workers' compensation benefits at the high levels provided by the Alaska workers' compensation law to individuals residing in localities with living costs lower than those in Alaska.[75]

The legislature also made clear its intent that the Act be construed "to ensure the quick, efficient, fair, and predictable delivery of indemnity . . . benefits to injured workers at a reasonable cost to . . . employers."[76] The legislature unquestionably intended benefits

---

[72]     *Id.*

[73]     *Id.* at 274.

[74]     H. Judiciary Comm., Sectional Analysis, House C.S. for C.S. for S.B. 322, 15th Legis., 2d Sess. § 29 (Apr. 6, 1988) ("[T]he court suggested [in *Brown*] that an adjustment based on actual cost of living may pass constitutional muster."), *in* WILSON, *supra* note 64.

[75]     Ch. 79, § 1(c)(1)-(3), SLA 1988.

[76]     *Id.* § 1(a); *see also* AS 23.30.001(1) (identifying same purpose in codified
(continued...)

to have some relationship to the cost of living where the recipient resided to ensure the compensation rate was not so generous that the employee would decide not to work.[77] But the legislature still based compensation on an employee's spendable weekly wage at the time of injury; high-wage earners thus would be paid higher workers' compensation benefits — up to the maximum amount — than lower-wage earners.

ASRC argues that its proposed interpretation better fulfills the legislative purpose in circumstances like Roberge's, implying that the relationship between the amount of compensation and the cost of living is the appropriate way to gauge whether an employee has adequate incentive to return to work. Roberge argues that under the Commission's calculation method he receives only about 38% of his spendable weekly wage and that the maximum compensation rate is about 52% of his spendable weekly wage; under either scenario, he receives far less than the 80% rate the legislature deemed generally an adequate incentive for employees to return to work.

The Act is to be construed so that compensation coverage is not unduly costly to employers,[78] but it also balances the goals of "replacing enough income with enough money that an injured worker's standard of living [will] not be dramatically reduced [and] keeping benefits low enough to provide an incentive to return to work."[79] It seems unlikely that paying only about 38% of spendable wages rather than 52% fulfills

---

[76]     (...continued) section).

[77]     Ch. 79, § 1(c)(1)-(3), SLA 1988.

[78]     AS 23.30.001(1).

[79]     *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1124 (Alaska 2017).

the legislature's intent that the Act be construed to ensure the fair and predictable delivery of compensation benefits to injured workers.[80]

### c. AS 23.30.175(b)(5)

In 2005 the legislature added AS 23.30.175(b)(5), capping an out-of-state recipient's compensation at the rate received in Alaska. The then-Director of the Workers' Compensation Division, Paul Lisankie, testified about the amendment's purpose:

> Currently . . . there's a cost of living adjustment in the Workers' Compensation Act and it only applies outside the state. So, people who are injured within the State of Alaska get a unified rate, and it's based on a blended assessment of the cost of living in Anchorage, Fairbanks, and Juneau . . . . So, no matter where you reside in Alaska, no matter how expensive or inexpensive, you get the same rate. However, if you are a non-resident worker at the time of your injury working in Alaska or if you move out after you get injured and you go to someplace that has an arguably higher cost of living, my division is tasked by the current statute to do a cost of living analysis and . . . allow you to receive a higher compensation rate than you could have anywhere in the state. I don't really think that that's appropriate to pay people who are non-resident injured workers more than we pay our own injured workers. So, section 32 would preclude that and cap the rate that can be paid to a non-resident at the same amount that would be paid someone who was residing in Alaska.[81]

Lisankie expressed concern that people living in high-cost areas of Alaska, like Bethel, could not receive an adjustment for their high living costs, although people residing in

---

[80]     AS 23.30.001(1).

[81]     Testimony of Paul Lisankie, Dir., Div. of Workers' Comp. at 31:11-32:28, Hearing on S.B. 130 Before Sen. Labor & Com. Comm., 24th Leg., 1st Sess. (Mar. 10, 2005).

areas like Orange County, California could.[82] The proposed solution was to cap a recipient's rate at the Alaska rate.

In *James* the Commission focused exclusively on the 2005 statutory amendment capping COLA adjustments when interpreting the legislative intent of all the Act's COLA provisions.[83] The Commission quoted an analysis that concluded the 2005 amendment capped a non-resident's compensation rate "at the compensation rate the recipient would receive if residing in Alaska."[84] The Commission then discussed a post-enactment Department of Law letter noting that the Alaska Constitution does not require that the right to travel "be *rewarded* by an increase in benefits over the benefit the employee would receive had the employee remained in Alaska."[85] The Commission cited this letter as supporting "an express intent not to reward an injured worker who lives somewhere outside of Alaska, where there is a lower cost of living, with higher benefits than the same category of injured worker who remains in Alaska."[86]

Neither AS 23.30.175(b)(5)'s statutory language nor its legislative history demonstrates "an express intent not to reward an injured worker who lives somewhere outside of Alaska, where there is a *lower* cost of living, with higher benefits than the

---

[82] *See id.*

[83] *N. Constr. v. James*, AWCAC Dec. No. 251, at 12-14, 16-18 (July 25, 2018), https://labor.alaska.gov/WCcomm/memos-finals/D_251.pdf.

[84] *Id.* at 12 (quoting Dep't of Law, Section by Section Analysis, CSSB 130(FIN)am (Apr. 15, 2005), in H. Labor & Com. Comm. Files on S.B. 130, 24th Leg., 2d Sess.).

[85] *Id.* at 13 (emphasis in original) (quoting Letter from Scott J. Nordstrand, Assistant Atty. Gen., to Governor Frank H. Murkowski 41 (on file with the Department of Law), 2005 WL 3734058, at *24 (July 18, 2005)).

[86] *Id.*

same category of injured worker who remains in Alaska."[87]  The statutory language and legislative history address recipients residing in areas with a *higher* cost of living than Alaska, as the Commission itself recognized.[88]  Nothing supports "an intent to provide a non-resident recipient with benefits equating to the cost of living where the recipient is living" as the Commission identified.[89]  And the Department of Law's sectional analysis summarizing the amendment's effect to the legislature did not suggest that it would directly impact employees living in lower-cost areas,[90] possibly because subsection .175(b)(1) already dealt with lower-cost areas.

The 2005 legislative history of AS 23.30.175(b)(5) cannot displace the 1988 legislative history enacting AS 23.30.175(b)(1)-(4).  And although either party's proposed construction fulfills the goal of encouraging a return to work, Roberge's is more consistent with other legislative purposes identified in 1988.

### 3.    Policy arguments

ASRC contends that Roberge's proposed construction of the Act "means that any high[-]wage earner whose benefits are subject to the cap in Section .175(a) are exempt from the Act's COLA provisions."  But Roberge's analysis applies the COLA provision in all cases before considering AS 23.30.175(a)'s maximum rate cap.  Under Roberge's analysis, whether AS 23.30.175(a) applies when an employee moves out of state depends both on the spendable weekly wage and the COLA where the employee

---

[87]     *Id.* (emphasis added).

[88]     *Id.* at 22 (noting statutory intent to ensure that "compensation rate cannot be adjusted to a rate higher than the Alaskan maximum compensation rate" when employee moves to higher-cost area).

[89]     *Id.* at 13.

[90]     Dep't of Law, Section by Section Analysis, CSSB 130(FIN)am (Apr. 15, 2005), in H. Labor & Com. Comm. Files on S.B. 130, 24th Leg., 2d Sess.

resides.[91]  ASRC's claim that Roberge seeks a special exemption from the COLA for high-wage earners who move or reside out of state is demonstrably inaccurate.

ASRC relatedly asserts that Roberge's analysis would lead to absurd results, positing a hypothetical employee with an unadjusted (or Alaska) compensation rate of $1,100.  Using Roberge's analysis, an employee with this unadjusted compensation rate who moved to the same area as Roberge would have a COLA-adjusted compensation rate of $792.44.  ASRC contrasts these facts with Roberge's: under Roberge's analysis he would receive $1,143, the same compensation rate as if he resided in Alaska, which ASRC contends is an absurd result privileging high-wage earners.  But ASRC's argument does not take into account the statutory provisions relating the employee compensation rate to wages.[92]  A hypothetical employee with an

---

[91]  Hypothetically contrasting James's and Roberge's facts using Roberge's method illustrates this point.  Both were injured in 2014, so the same maximum compensation rate ($1,143) applies. *James*, AWCAC Dec. No. 251 at 2-3.  Roberge's spendable weekly wage was $2,190.98.  James's spendable weekly wage was $2,000.28. *Id.* at 6.  Assuming both resided in the Elkhart-Goshen, Indiana, area, with a 70.69% COLA, ALASKA WORKERS' COMP. DIV., BULL. NO. 19-09 (Dec. 10, 2019), https://labor.alaska.gov/wc/bulletins/19-09.pdf, Roberge's rate would be subject to AS 23.30.175(a)'s cap but James's would not.  Roberge would have a COLA-adjusted rate of $1,239.04 ($2,190.98 x 80% x 70.69%), exceeding the maximum compensation rate.  James would have a COLA-adjusted rate of $1,131.20 ($2000.28 x 80% x 70.69%), below the applicable maximum compensation rate.

The location where a recipient lives also can determine whether the cap applies.  If Roberge resided in Joplin, Missouri, under his proposed method his adjusted rate would be $1,104.78 per week, less than the $1,143 applicable maximum rate; $1,104.78 is the product of Roberge's spendable weekly wage ($2,190.98) times 80% times the 2017-19 COLA for Joplin, Missouri (63.03%).  ALASKA WORKERS' COMP. DIV., BULL. NO. 19-09 (Dec. 10, 2019), https://labor.alaska.gov/wc/bulletins/19-09.pdf.

[92]  AS 23.30.220(a) (basing compensation on spendable weekly wage); AS 23.30.185 (setting temporary total disability at 80% of spendable weekly wage).

unadjusted compensation rate of $1,100 would have a spendable weekly wage of $1,375,[93] and $792.44 is 57.632% of $1,375. ASRC does not dispute that the $1,143 maximum compensation rate is about 52% of Roberge's spendable weekly wage; under Roberge's analysis he receives a lower percentage of his wages than ASRC's hypothetical employee under *any* scenario. Nor does ASRC dispute that its calculation method gives Roberge only about 38% of his spendable weekly wage. Roberge's interpretation of the statute brings the percentage of spendable weekly wage available to high-wage earners closer to that of medium- or low-wage earners, minimizing the risk that the reduction could be interpreted as a penalty.

A final hypothetical involving a move to McAllen, Texas, with 2019's lowest COLA at 59.36%, illustrates a potential weakness in ASRC's analysis.[94] Under Roberge's calculation method, his weekly compensation rate would be $1,040.45, equal to 47.488% of his spendable weekly wage and less than the maximum rate. And 47.488% is the same wage percentage for any other McAllen recipient whose unadjusted compensation rate is less than AS 23.30.175(a)'s maximum rate if AS 23.30.175(a) is applied after making the COLA adjustment. Under ASRC's calculation method, Roberge's weekly compensation rate would be $678.48, equal to 30.967% of his spendable weekly wage. ASRC does not justify the difference in treatment between injured workers in the same out-of-state location when the explicit steps in AS 23.30.175(b)(1) yield a compensation rate below the AS 23.30.175(a) maximum.

We reject ASRC's arguments that AS 23.30.175(b)(1) requires applying AS 23.30.175(a)'s maximum rate before applying the COLA provision. Because

---

[93]  $1,375.00 x 80% = $1,100.00.

[94]  ALASKA WORKERS' COMP. DIV., BULL. NO. 19-09 (Dec. 10, 2019), https://labor.alaska.gov/wc/bulletins/19-09.pdf.

ASRC's application method mirrors *James*, our construction of the statute overrules *James*. But because the Commission's *James* analysis differed significantly from ASRC's proposed construction, we address the Commission's analysis as well.

**D.    The Commission Incorrectly Interpreted AS 23.30.220 And Consequently Misconstrued AS 23.30.175.**

*James* presented the same legal issue about applying the statutory maximum and the COLA, but the Commission did not focus on AS 23.30.175(b) to the extent the parties do in this appeal. Roberge sets out three arguments about the Commission's *James* decision. He contends that the Commission: (1) erroneously "appeared to defer to the results of the Board['s] online website calculator rather than the text of the statute"; (2) inappropriately used 2005 legislative history when interpreting 1988 statutory amendments; and (3) apparently preferred a statutory interpretation "that minimizes the number of calculations." ASRC's legal argument cites *James* only for its discussion of legislative purpose.

We agree that *James* failed to give appropriate weight to the statute's text. The Commission's error appears to be based on a misunderstanding of AS 23.30.220 and the benefit calculator. The benefit calculator generates two numbers when a user calculates temporary total disability: the spendable weekly wage and the "Weekly Benefit." It appears that the Commissioner or the Board historically fulfilled the legislature's mandate to "prepare formulas that shall be used to calculate an employee's spendable weekly wage"[95] by calculating compensation rates and publishing the rates in table form, supplemented with worksheets allowing for certain hand calculations when needed.[96] The Division or Board later changed to a website that permits individual

---

[95]    AS 23.30.220(b).

[96]    *See, e.g.*, ALASKA WORKERS' COMP. BD., 2003 WEEKLY COMPENSATION
(continued...)

calculations given certain inputs.[97] Because AS 23.30.220 provides no instruction about calculating benefit amounts, the only reasonable weekly benefit calculation uses the applicable statutory sections to determine the appropriate percentage of spendable weekly wage. If the benefit amount is above AS 23.30.175(a)'s maximum rate, the calculator apparently limits the "Weekly Benefit" to the maximum rate.[98]

The Commission implied that the benefit calculator displaced other statutory provisions about calculating compensation, writing about AS 23.30.185's requirement that temporary total disability be 80% of spendable weekly wage that "the determination of what constitutes 80[%] of spendable weekly wage has already been made by the [D]ivision and is assessed by utilizing AS 23.30.220, its authorized benefits calculator, and the maximum and minimum rates under AS 23.30.175."[99] The Commission did not explain how the benefit calculator determined whether the maximum or minimum rate applied. Nothing in AS 23.30.220 authorizes the benefit calculator; although the Board may have hoped to minimize rate calculation disputes —

---

[96]　(...continued)
RATE TABLES (2003), https://labor.alaska.gov/wc/2003rate/WCR-Complete.pdf; Worksheet for Computation of 80% Spendable Income Compensation, 2003, https://labor.alaska.gov/wc/forms/2003_WC_Compensation_Worksheet.pdf.

[97]　*See Benefit Calculator*, ALASKA WORKERS' COMP. DIV., https://labor.alaska.gov/wc/benefitcalculator.htm (last visited Dec. 21, 2021).

[98]　Although the website does not explicitly say this, information on the page about the existence of the maximum compensation rate as well as the stipulation in Roberge's case that the online benefit calculator shows his "TTD Weekly Benefit is $1,143 per week" — coincidentally the maximum compensation rate for his injury date — indicates the online benefit calculator calculates an employee's spendable weekly wage and Alaska compensation rate.

[99]　*N. Constr. v. James*, AWCAC Dec. No. 251 at 14 (July 25, 2018), https://labor.alaska.gov/WCcomm/memos-finals/D_251.pdf.

a reasonable goal — creating the benefit calculator cannot alter statutory language. The Commission essentially decided that the calculator removed or modified AS 23.30.185's statutory language about calculating temporary total disability. There is no indication this was the Board's intent; even if it were, rewriting the statute would be beyond its power.[100]

The Commission was concerned that applying the COLA before the maximum rate cap would render parts of the Act meaningless; it said this construction of the statute "ignored" AS 23.30.175(a) and "deemed irrelevant" AS 23.30.220 when an employee does not reside in Alaska.[101] We cannot imagine how any workers' compensation rate calculation can dispense with AS 23.30.220; its gross weekly earnings and spendable weekly wages rules underlie all compensation rate calculations. As previously noted, the parties agree that AS 23.30.220 is used to determine an employee's spendable weekly wage. And Roberge's interpretation does not "ignore" AS 23.30.175(a); his method uses the explicit steps in AS 23.30.175(b)(1) then applies AS 23.30.175(a) if compensation exceeds the maximum rate.

We agree with Roberge that in *James* the Commission inappropriately relied on 2005 legislative history to construe all parts of AS 23.30.175, as reflected in our earlier discussion. And the statutory language itself shows the Commission incorrectly interpreted the legislative history it discussed. The Commission identified the statutory purpose of AS 23.30.175(b)(5) as "to provide a non-resident recipient with benefits

---

[100]    *See Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971) ("[N]o regulation adopted is valid or effective unless consistent with the statute . . . ." (quoting former AS 44.62.030 (1967))); AS 44.62.030 ("[A] regulation is not valid or effective unless consistent with the statute . . . .").

[101]    *James*, AWCAC Dec. No. 251 at 15.

equating to the cost of living where the recipient is living."[102] This cannot be the goal because subsection .175(b)(5) limits compensation to an employee's Alaska rate, thereby prohibiting increased benefits to those living in areas with higher living costs.

Roberge finally objects to the Commission's consideration of the number of calculations required when the COLA is applied first. This issue appears to be related to the Commission's misconstruing AS 23.30.175. The Commission was concerned that applying the COLA first would require recalculation of "an injured worker's base compensation rate when a worker moves from Alaska."[103] It is not clear what the Commission meant because it used the phrase "base compensation rate" on only one page of its decision.[104] But, as we noted earlier, the Commission distinguished the "weekly compensation rate"[105] and the "weekly rate of compensation,"[106] indicating that an employee's "weekly compensation rate" is calculated under AS 23.30.220 and that AS 23.30.175(a) then applies to determine the "weekly rate of compensation."[107]

Considering how AS 23.30.175(b)(1) uses the terms, the Commission's reasoning is opaque. Subsection .175(b)(1) provides that "the weekly rate of compensation"—which the Commission said included application of subsection .175(a) to the "weekly compensation rate" derived from the benefit calculator — "shall be calculated by multiplying the recipient's weekly compensation rate . . . by the ratio of the

---

[102]  *Id.* at 13.

[103]  *Id.* at 15.

[104]  *See id.*

[105]  AS 23.30.175(b)(1), (3)-(5).

[106]  AS 23.30.175(a), (b)(1).

[107]  *James*, AWCAC Dec. No. 251 at 8, 11-12. The "base compensation rate" thus may be the "weekly compensation rate."

cost of living of the area in which the recipient resides to the cost of living in this state." If AS 23.30.175(a) determines "the weekly rate of compensation" and applies before AS 23.30.175(b), why would AS 23.30.175(b)(1) require calculating an out-of-state recipient's "weekly rate of compensation" based on the "weekly compensation rate" calculated under AS 23.30.185 in Roberge's case? We see no difference in the number of calculations required under the parties' differing interpretations.

As previously discussed, we conclude that the statutory language supports Roberge's calculation method. *James*'s reasoning does not provide a comprehensive alternative construction.

### E.    Constitutional Issues

The parties have provided briefing about constitutional issues, and ASRC contends that Roberge's arguments amount to a constitutional challenge to the statutory COLA provision. But Roberge did not ask us to declare the COLA provision unconstitutional; he seeks an order that he be paid compensation consistent with his construction of the statute. We thus see no need to consider the constitutional issues the parties briefed.

## V.    CONCLUSION

We OVERRULE the Commission's decision in *Northern Construction v. James*, REVERSE its decision in this case, and REMAND this case to the Commission with instructions to remand to the Board to award Roberge compensation accordingly.