*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JULIE I. HUSBY and GREGORY L. HUSBY, | ) ) ) | Supreme Court No. S-18023 |
| Appellants, | ) ) | Superior Court No. 3AN-19-09729 CI |
| v. | ) ) | O P I N I O N |
| JENNIFER M. MONEGAN and SCOUT A. MONEGAN, | ) ) ) | No. 7620 – September 16, 2022 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: Herbert M. Pearce, Law Office of Herbert M. Pearce, Anchorage, for Appellants. Notice of nonparticipation filed by Michael Gershel, Law Office of Michael Gershel, Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

BORGHESAN, Justice.

I.      INTRODUCTION

        This appeal presents two related questions of law arising out of a motion to modify an order giving visitation rights to grandparents.

        First, which statute governs a motion to modify grandparents' visitation: AS 25.20.065(a), which permits grandparents to petition for visitation but does not

mention modification of visitation orders; or AS 25.20.110(a), which authorizes modification of visitation orders but does not expressly mention grandparents? We conclude that AS 25.20.110(a) applies, requiring a movant to show a substantial change in circumstances before the court may modify the existing order.

Second, when a grandparent seeks visitation over a parent's objection, the grandparent must show clear and convincing evidence that the parent is unfit or that denying visitation will be detrimental to the child.[1] If the court awards visitation rights to a grandparent, and the parent later moves to modify the grandparent's visitation rights, must the court apply this "parental preference rule" in deciding whether to modify visitation? We hold that so long as the parents were protected by the parental preference rule in the proceedings resulting in the grandparent's visitation rights, the rule does not apply in later proceedings to modify those visitation rights.

Having clarified the applicable legal standards, we reverse and remand the superior court's order in this case because it was error to decide the motions to modify the grandparents' visitation rights without first holding a hearing on disputed issues of fact.

---

[1]     *See Ross v. Bauman*, 353 P.3d 816, 828-29 (Alaska 2015); *cf. Daves v. McKinley*, 425 P.3d 92, 96 (Alaska 2018) ("In its initial resolution of a custody dispute between a . . . parent and any third party, including a grandparent, the . . . parent prevails unless the non-parent shows 'by clear and convincing evidence that the parent is unfit or that the welfare of the child requires the child to be in the custody of the non-parent.'" (quoting *Dara v. Gish*, 404 P.3d 154, 161 (Alaska 2017))).

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jennifer Monegan is the birth mother of a child born in 2011, and Scout Monegan is the child's adoptive father.[2]  Gregory and Julie Husby are the child's maternal grandparents and live in Oregon.  Jennifer and her child lived with the Husbys for a time after the child's birth; the Husbys provided childcare and were significantly involved in the child's life until he was two and a half years old.  However, Jennifer's relationship with the Husbys began to deteriorate after she started dating Scout.

After Jennifer and Scout married in 2013, the Husbys petitioned for visitation in Oregon, where all of the parties lived at the time.  Jennifer and the Husbys came to a mediated agreement providing, among other things, that the Husbys would have visitation with the child one weekend per month for 32 hours, as well as unlimited written and telephonic contact.  The agreement also gave the parties an ongoing responsibility to update their contact information.  An Oregon court approved the agreement and entered a stipulated order in March 2014.

The Monegans moved to Alaska in March 2018.  In-person visits occurred less frequently after the relocation:  Between March 2018 and August 2019 the Husbys visited the child seven times.  The Husbys tried to maintain their relationship with the child through letters, gifts, and weekly phone calls, and claim they were able to do so through the summer of 2019.

### B.    Proceedings

In September 2019 the Monegans filed a complaint in the superior court to terminate the Husbys' visitation rights, alleging it was not in the child's best interests to

---

[2]    Scout adopted the child in 2014.

continue visitation. The Husbys counterclaimed for modification of the stipulated order to allow "reasonable visitation" with the child.

### 1. Cross-motions to modify visitation

The Husbys then filed a motion to enforce the stipulated visitation order. The Husbys alleged that Jennifer and Scout were failing to abide by the stipulated order in several ways, including by limiting the frequency and duration of their phone calls with the child. The Husbys also alleged that Jennifer and Scout had cancelled three visits. In addition to seeking the Monegans' compliance with the stipulated order, the Husbys reiterated their request for an order modifying the visitation schedule.

The Monegans opposed the Husbys' motion and filed a cross-motion to deny the Husbys visitation rights. The Monegans submitted an affidavit from Jennifer and unsworn declarations from the child's birth father, the birth father's wife, and Jennifer's sister. Relying on these documents, the Monegans alleged that Gregory had secretly contacted the child's birth father in 2019 to obtain a sample of his DNA for a paternity test. Although the child did not know at the time that he was adopted, Gregory allegedly told the birth father that the child had been asking who his birth father was. The Monegans alleged that once the paternity test came back, Gregory threatened to sue them to vacate the adoption. The Monegans added that Gregory had threatened to read the child a lengthy and derogatory "book" Gregory wrote about the Monegans if they did not comply with his requests. The Monegans also alleged that Gregory had become "belligerent and bullying" in his interactions with them, and attached transcripts of phone conversations between the parties corroborating their account.

Jennifer's sister alleged that Gregory had been physically violent with his children when they were younger. Among other things she alleged that Gregory had once drunkenly waved a gun and threatened to kill himself and told the sister "he could kill [her] and no one would know." Jennifer's sister also stated that she had recently

obtained a restraining order against Gregory because he had screamed at her husband and used "foul language" and "derogatory names" after she rejected the Husbys' request to visit with her daughter.

In response the Husbys submitted an affidavit from Gregory. Gregory denied many of the Monegans' allegations, denying that he had harassed any of his children or their spouses, engaged in belligerent or bullying behavior, been physically violent with his children when they were younger, or pulled a gun on Jennifer's sister. The Husbys also submitted an affidavit from Jennifer's brother, which suggested that an incident involving Gregory that the sister's declaration portrayed as inappropriate was in fact reasonable and caused him no harm.

### 2. Superior court's order terminating visitation rights

The superior court issued an order denying the Husbys' motion to enforce the stipulated order and granting the Monegans' cross-motion to deny the Husbys visitation rights.

In deciding the Monegans' motion to modify the Husbys' visitation, the superior court applied AS 25.20.065(a), as modified by our decision in *Ross v. Bauman*.[3] This statute authorizes a grandparent to petition the superior court for an order establishing reasonable rights of visitation between the grandparent and child if: "(1) the grandparent has established or attempted to establish ongoing personal contact with the child; and (2) visitation by the grandparent is in the child's best interest." *Ross* held that, to protect parents' fundamental constitutional right to raise their children, a grandparent who seeks visitation over a parent's objection must also "prove by clear and convincing evidence that it is detrimental to the child to limit visitation with the [grandparent] to

---

[3]     353 P.3d at 828-29.

what the child's otherwise fit parents have determined to be reasonable."[4] The superior court determined that AS 25.20.110(a), which requires a showing of substantial change in circumstances before an existing visitation order may be modified, did not apply to this case. Nevertheless, the court found that the Monegans' move from Oregon to Alaska qualified as a substantial change in circumstances.

Applying the standards in AS 25.20.065(a), the superior court first found that the Husbys had established ongoing personal contact with the child, citing the regular childcare they provided until he was two-and-a-half, and their regular visitation with him until he moved to Alaska. In its best interests analysis the court found that the child's "physical, emotional, and mental needs are not benefitted by being subjected to Gregory's forceful and, many times, inappropriate meddling into decisions that should be reserved for [the child's] parents." Referencing Gregory's investigation into the child's paternity, his threats to share derogatory information about the Monegans with the child, and his threats to overturn Scout's adoption of the child, the court found that although the Husbys "clear[ly] . . . love their grandchild," Gregory's manipulation and aggression in pursuit of his goals were detrimental to the child. The court also noted the alleged history of abuse in the Husby household, citing two incidents: the one when Gregory allegedly handcuffed his son to a bed, and the one when Gregory drunkenly waved a gun around and threatened to kill himself and Jennifer's sister.

Finally the court found that the Husbys had not shown by clear and convincing evidence that a lack of visitation would be detrimental to the child. The court therefore denied the Husbys' request for visitation against the Monegans' wishes.

The Husbys moved for reconsideration, arguing that the superior court applied the incorrect standard in determining whether to modify the stipulated visitation

---

[4] *Id.*

order.  The Husbys also claimed that the court was required to hold an evidentiary hearing before modifying the stipulated order.  The court denied the Husbys' motion for reconsideration, disagreeing with the Husbys' argument that AS 25.20.110(a) — rather than the standard the court applied — governs modification of grandparent visitation rights.  The court also noted that the Husbys had failed to request an evidentiary hearing to address modification of the stipulated order despite having the opportunity to do so prior to the court's ruling on the merits.

### 3. Motion to compel enforcement of notice provision

After reconsideration was denied the Husbys filed a motion to compel disclosure of the Monegans' mailing address.  The Husbys argued that disclosure was mandated by the terms of the adoption decree, which incorporated the stipulated visitation order, including the provision for updating contact information.  The Monegans opposed, and the superior court denied the Husbys' motion, explaining that the Monegans have the right to determine appropriate contact between the child and grandparents.

The Husbys appeal the superior court's order terminating their visitation rights and the order denying their motion to compel.

## III. STANDARDS OF REVIEW

Whether the superior court applied the correct standard in a custody or visitation determination is a question of law we review de novo.[5]  We also review de

---

[5]     *Id.* at 823 (Alaska 2015) (quoting *Osterkamp v. Stiles*, 235 P.3d 178, 184 (Alaska 2010)).

novo constitutional questions,[6] including the adequacy of the notice and hearing afforded a litigant.[7]

## IV.    DISCUSSION

### A.    It Was Error To Apply AS 25.20.065(a) And The Parental Preference Rule When Considering The Proposed Modification Of Grandparent Visitation, But This Error Was Harmless.

When a party seeks to modify an order giving visitation rights to grandparents, AS 25.20.110(a) applies.  This statute, which governs modification of custody and visitation orders generally, requires the movant to show a substantial change in circumstances and that modified visitation is in the child's best interests.  And so long as the parental preference rule described in *Ross v. Bauman*[8] applied in the proceedings that yielded the initial visitation order in the grandparents' favor, the parental preference rule does not apply in subsequent proceedings to modify that order.

In this case the superior court mistakenly applied the statute governing petitions to establish grandparent visitation in the first instance, AS 25.20.065(a), as well as the parental preference rule.  These two errors do not, by themselves, require reversal. The court found in the alternative that the Monegans established the substantial change in circumstances required by AS 25.20.110(a):  their move from Oregon to Alaska.[9]  And applying the parental preference rule was not decisive because the court separately found

---

[6]     *Id.*

[7]     *Debra P. v. Laurence S.*, 309 P.3d 1258, 1260 (Alaska 2013) (quotation omitted).

[8]     353 P.3d at 828-29.

[9]     Alaska R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

that having visitation with the Husbys was not in the child's best interests. But because this best interests finding was made without first holding a hearing to resolve disputed facts, we remand for further proceedings.

### 1. Alaska Statute 25.20.110(a) governs motions to modify orders granting visitation rights to grandparents.

In deciding whether to grant the Monegans' motion to modify the Husbys' visitation, the superior court applied AS 25.20.065(a), under which "a child's grandparent may petition the superior court for an order establishing reasonable rights of visitation" if the grandparent "has established or attempted to establish ongoing personal contact with the child" and visitation "is in the child's best interest." The Husbys contend that the superior court should have applied AS 25.20.110(a)'s standard, which requires that a party moving to modify custody or visitation show a substantial change in circumstances requiring modification of the award and that the modification is in the child's best interests. We agree with the Husbys.[10]

We construe statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[11] The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others.[12] "We give

---

[10]    *Ross*, 353 P.3d at 823 ("[W]hether the [superior] court applied the correct standard in a custody [or visitation] determination is a question of law we review de novo." (third alteration in original) (quoting *Osterkamp*, 235 P.3d at 184)).

[11]    *Roberge v. ASRC Constr. Holding Co.*, 503 P.3d 102, 104 (Alaska 2022) (quoting *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017)).

[12]    *Id.* (quoting *Murphy v. Fairbanks North Star Borough*, 494 P.3d 556, 563 (Alaska 2021)).

unambiguous statutory language its ordinary and common meaning . . . ."[13] And whenever possible we interpret each part or section of a statute in light of every other part or section, so as to create a "harmonious whole."[14]

The text of AS 25.20.065(a) indicates that it does not apply to modification of existing visitation orders. For one, the text specifically authorizes petitions to "establish[]" visitation; it does not mention modification.[15] Furthermore, the element of the statute's test requiring grandparents to have "established or attempted to establish ongoing personal contact with the child"[16] is meaningful only when applied to a petition to establish visitation rights for the first time. When a party seeks to *modify* an order granting visitation rights to a grandparent, the grandparent will necessarily already have established ongoing personal contact with the child. It does not make sense to apply AS 25.20.065(a) to motions to modify visitation when one part of the two-part test is superfluous in that context.

By contrast, AS 25.20.110(a) broadly allows a court to modify "[a]n award of custody of a child or visitation with the child . . . if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." Although this statute does not mention grandparents and does specifically mention parents, the statutory text does not *limit* its scope to orders granting visitation to parents. The reference to "parent" provides only that the court must

---

[13]     *Id.* (quoting *Cora G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 461 P.3d 1265, 1277 (Alaska 2020)).

[14]     *Id.* (quoting *Darrow*, 403 P.3d at 1127).

[15]     AS 25.20.065(a).

[16]     AS 25.20.065(a)(1).

explain its reasoning on the record if modifying visitation over a parent's objection.[17] But the statutory text is broad enough to encompass modification of grandparent visitation orders. And there is no indication in the statute's legislative history of intent to exclude modification of grandparent visitation awards from the statute's purview.

The policies behind AS 25.20.110(a)'s standard for modifying custody and visitation apply equally to parents and grandparents. Requiring the movant to show a substantial change in circumstances since the existing custody or visitation order was issued promotes "finality and certainty," qualities that are "critical to the child's emotional welfare."[18] The change in circumstances requirement thus "supplement[s] the statutorily mandated 'best interest of the child' standard by recognizing the child's right to stability and continuity in his or her living arrangements."[19] The requirement protects that right by discouraging "harmful and needless relitigation of the issues" in custody or visitation proceedings of any type.[20]

The superior court relied on Oregon case law to conclude that a change of circumstances is not needed to modify a grandparent visitation award. Oregon law is inapposite because there, unlike here, a party never needs to show a change of circumstances to modify visitation, whether by parents or grandparents. Oregon does

---

[17]     AS 25.20.110(a) ("If a parent opposes the modification of the award of custody or visitation with the child and the modification is granted, the court shall enter on the record its reasons for the modification.").

[18]     *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (quoting *Peterson v. Swarthout*, 214 P.3d 332, 340-41 (Alaska 2009)).

[19]     Richard Montes, Harold J. Cohn & Shelley L. Albaum, *The Changed-Circumstance Rule and the Best Interest of the Child*, 24 L.A. LAW., Dec. 2001, at 12.

[20]     LINDA D. ELROD, CHILD CUSTODY PRACTICE & PROCEDURE § 17:4 (2021 ed.).

not have a statutory standard for modifying visitation.[21]  Oregon courts have held that although a showing of a substantial change of circumstances is required before modifying parental *custody*, the only relevant factor when deciding whether to modify court-ordered *visitation* is the best interests of the child.[22]  But Alaska law expressly requires a showing of a change of circumstances to modify custody *and* visitation orders.[23]  The Oregon decisions relied on by the superior court simply do not fit our statutory framework.

But we do find persuasive the logic of the Tennessee Supreme Court when faced with the same statutory problem we face here.  Tennessee's grandparent visitation statute, like ours, addresses only the initial petition for visitation; it does not mention modification of court-ordered visitation.[24]  In *Lovlace v. Copley* the Tennessee court determined that a party seeking modification of court-ordered grandparent visitation must first demonstrate a material change in circumstances and then prove that the requested modification of visitation is in the best interests of the child.[25]  The court reasoned that this framework for modifying a parent's visitation is "equally applicable" when modifying grandparent visitation because "giv[ing] deference to a court's order" and "promot[ing] the important policy goal of stability for the child" are concerns in both

---

[21]     *See Meader v. Meader*, 94 P.3d 123, 130-31 (Or. App. 2004), *rev. denied*, 101 P.3d 809 (Or. 2004).

[22]     *Id.*; *see also In re Marriage of Ortiz*, 801 P.2d 767, 769-70 (Or. 1990).

[23]     AS 25.20.110(a).

[24]     *Compare id.*, with TENN. CODE ANN. § 36-6-306 (West 2022).

[25]     418 S.W.3d 1, 23 (Tenn. 2013).

-12-                                                           **7620**

types of proceedings.[26] The court also declined to distinguish between modification of custody and visitation, noting that "[v]isitation rights arise from the right of custody and are controlled by the same constitutional protections."[27]

In light of the text and purpose of our own statutes, as well as the rulings of other courts that have adopted a change in circumstances requirement when addressing motions to modify grandparent visitation,[28] we hold that AS 25.20.110(a) applies to motions to modify an order granting visitation to grandparents.

> **2.     The parental preference rule does not apply in proceedings to modify a grandparent's visitation rights so long as the rule applied to the initial proceeding establishing those rights.**

The Husbys also argue that the superior court erred by applying the parental preference rule in the proceedings to modify their visitation, contending that this rule should apply only to an initial petition to establish grandparent visitation under AS 25.20.065(a). We generally agree with the Husbys' argument on this point.

The parental preference rule protects parents' constitutional liberty interest in the care, custody, and control of their children by creating a presumption in favor of "a fit parent's determination as to the desirability of visitation with third parties."[29] The

---

[26]     *Id.* at 29, 31 (quoting *Rennels v. Rennels*, 257 P.3d 396, 401-02 (Nev. 2011)).

[27]     *Id.* at 30 (alteration in original) (quoting *Smallwood v. Mann*, 205 S.W.3d 358, 362-63 (Tenn. 2006)).

[28]     *E.g.*, *Rennels*, 257 P.3d at 401-02; *Kulbacki v. Michael*, 899 N.W.2d 643, 645-46 (N.D. 2017); *Scott v. Scott*, 19 P.3d 273, 275 (Okla. 2001).

[29]     *Ross v. Bauman*, 353 P.3d 816, 827 (Alaska 2015) (emphasis omitted) (quoting *Evans v. McTaggart*, 88 P.3d 1078, 1089 (Alaska 2004)); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he interest of parents in the care, custody, and control of their children[] is perhaps the oldest of the fundamental liberty interests (continued...)

rule requires a third party seeking court-ordered visitation with a child to prove by clear and convincing evidence "that it is detrimental to the child to limit visitation with the third party to what the child's otherwise fit parents have determined to be reasonable."[30]

Yet the rule does not apply in every dispute over visitation between parents and third parties. We have ruled that the presumption of parental preference "drops out in subsequent modification proceedings" when a third party has already been granted permanent custody over a parent's objection.[31] We now hold that the same rule applies when a third party has previously been granted visitation.

Our decision in *C.R.B. v. C.C.*, a third-party custody case, explains why the parental preference rule applies only to initial proceedings.[32] In that case we acknowledged that the parental preference rule "is a vital safeguard against enabling nonparents to convince courts to remove children improperly from their parents."[33] Yet applying the rule involves "an inevitable sacrifice of children's interests in cases where a nonparent can better serve those interests, but a parent's custody is not 'clearly detrimental.' "[34] We held that this "sacrifice is unnecessary where a court has granted

---

[29]    (...continued)
recognized by [the U.S. Supreme Court].").

[30]    *Ross*, 353 P.3d at 828-29.

[31]    *Daves v. McKinley*, 425 P.3d 92, 96 (Alaska 2018) (quoting *Abby D. v. Sue Y.*, 378 P.3d 388, 392 (Alaska 2016)).

[32]    959 P.2d 375, 380 (Alaska 1998).

[33]    *Id.* (emphasis omitted).

[34]    *Id.*; *see also Abby D.*, 378 P.3d at 394 ("[I]t would be antithetical to the child's best interests to apply [the parental preference presumption] again in [custody] modification proceedings.").

a nonparent custody after giving a parent notice and a chance to be heard" because the parent's right to custody had already been protected in the initial determination.[35]

There is no obvious reason to treat visitation disputes differently. So long as the parental preference rule applied in the proceeding that resulted in the third-party visitation order, the rule does not apply in proceedings to modify that order. "Having once protected the parent's right" to determine visitation "at the risk of sacrificing the child's best interests, we should not then sacrifice the child's need for stability . . . by modifying those arrangements more readily than in a parent-parent case."[36] Instead, "any modification motion is subject to the usual test of AS 25.20.110(a), meaning that the . . . decree will be modified only 'if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.' "[37]

The Monegans already received the protection of the parental preference rule in their initial visitation dispute with the Husbys in the Oregon courts. Oregon law contains a comparable parental preference rule requiring third parties seeking visitation with a child against the parents' wishes to rebut the presumption that the parents act in the child's best interests.[38] The Monegans did not invoke the protection of Oregon's parental preference rule in a contested proceeding. Instead they stipulated to visitation

---

[35]     *C.R.B.*, 959 P.2d at 380.

[36]     *Id.*

[37]     *Daves*, 425 P.3d at 96 (quoting *Abby D.*, 378 P.3d at 392); *see also C.R.B.*, 959 P.2d at 380.

[38]     OR. REV. STAT. ANN. § 109.119(1), (2)(a), (3)(a) (West 2022); *see also Harrington v. Daum*, 18 P.3d 456, 461 (Or. App. 2001) (reversing trial court's decision to order third-party visitation because neither third party nor children had interest that could "overcome father's right to decide the issue of visitation").

with the Husbys. But the rule nevertheless governed that dispute and protected the Monegans' constitutional right to direct their child's upbringing. Because that interest has already been protected, and there is a countervailing need to protect the stability of the child's family life, the parental preference rule does not apply in these modification proceedings.[39]

### B. It Was Error To Modify The Husbys' Visitation Without An Evidentiary Hearing To Resolve Disputed Facts.

Having clarified the standard courts should use when considering whether to modify a grandparent visitation award, we turn to the superior court's decision to terminate the Husbys' visitation rights. The superior court made findings addressing the two prongs of the correct standard: that the Monegans' move from Oregon to Alaska was a substantial change in circumstances and that ongoing visitation with the Husbys was not in the child's best interests. But because the court did not find that the Monegans' relocation alone justified terminating the Husbys' visitation, and because the court's findings about the child's best interests were based on disputed factual allegations erroneously resolved without a hearing, we must vacate the modification order and remand for further proceedings.

A party moving to modify custody or visitation must "demonstrate that the [alleged] changed circumstances [since entry of the last decree], considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing . . . decree."[40] The change in circumstances must be

---

[39] The initial grandparent visitation award was not based on a finding that the Monegans were unfit. Whether the parental preference rule applies in cases when the initial visitation award was premised on a finding of parental unfitness is not squarely presented in this appeal, and we express no opinion on that issue.

[40] *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991) (quoting *Lee v. Cox*, 790
(continued...)

-16-                                                                      7620

"substantial,"[41] but "[t]he change in circumstances required to modify visitation . . . is not as great as that required for a change in custody."[42] Although an out-of-state move may be a substantial change in circumstances,[43] the logistical difficulty of physical visitation does not necessarily mean that cutting off all contact is in the child's best interests. Here the court did not rule that the Monegans' relocation alone justified wholly eliminating the Husbys' in-person visitation, let alone their right to communicate with the child in writing, over the telephone, or through the internet.

The superior court's other best interests findings reveal why the court terminated the Husbys' visitation, but we cannot rely on these findings because they were made without an evidentiary hearing to resolve disputed facts.[44] In rejecting the Husbys' argument on reconsideration that the court should have held an evidentiary

---

[40]    (...continued)
P.2d 1359, 1361 (Alaska 1990)).

[41]    *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008) ("We require [a] showing [of a substantial change in circumstances to modify custody] to maintain continuity of care and to avoid disturbing and upsetting the child with repeated custody changes. We have cautioned that '[c]hildren should not be shuttled back and forth between divorced parents unless there are important circumstances justifying such change.' " (third alteration in original) (footnote omitted) (quoting *Nichols v. Nichols*, 516 P.2d 732, 735 (Alaska 1973))).

[42]    *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999).

[43]    *Cf. Bruce H. v. Jennifer L.*, 407 P.3d 432, 436-37 (Alaska 2017) ("[F]or physical custody purposes an out-of-state move is a substantial change of circumstances as a matter of law.").

[44]    *Regina C. v. Michael C.*, 440 P.3d 199, 203 (Alaska 2019) ("The 'adequacy of the notice and hearing afforded a litigant' is a question of constitutional law 'to which we apply our independent judgment.' " (quoting *Debra P. v. Laurence S.*, 309 P.3d 1258, 1260 (Alaska 2013))).

hearing to protect the Husbys' due process rights, the court commented that "[t]here is no clear direction either in Alaska Statutes or case law that grandparents are entitled to an evidentiary hearing for a modification of visitation rights." We have held in other visitation and custody contexts, however, that parties are entitled to a hearing if they oppose modification and raise a genuine dispute of material fact regarding the child's best interests.[45] The same important interests are at stake here, requiring the same procedural protection.[46]

The Husbys opposed the Monegans' proposed modification and raised factual disputes about the child's best interests; it was therefore error to modify visitation without a hearing. As the superior court recognized, Gregory's affidavits denied at least some of the Monegans' allegations, including that he had been physically violent with his children when they were younger, that he had pulled a gun on Jennifer's sister, and that he had harassed any of his children or their spouses as described in the sister's declaration. The Husbys also alleged that it would not be in the child's best interests to

---

[45] *See A.H. v. P.B.*, 2 P.3d 627, 628 (Alaska 2000) (vacating superior court's order reducing father's visitation without a hearing when father opposed mother's motion to modify visitation arrangement); *Walker v. Walker*, 960 P.2d 620, 622 (Alaska 1998) (holding that hearing was required prior to granting an opposed motion to modify custody when party opposing the custody modification "squarely contested" other party's allegations via affidavit); *D.D. v. L.A.H.*, 27 P.3d 757, 760 (Alaska 2001) ("[B]ecause Danielle opposed Leif's motion to modify the custody arrangement and raised factual disputes regarding the best interests of their child, the superior court should have conducted an evidentiary hearing.").

[46] *Cf. Laura B. v. Wade B.*, 424 P.3d 315, 318 (Alaska 2018) ("Had the superior court held a . . . hearing, Laura could have offered witnesses and other evidence supporting her contention that living with her was in the daughter's best interests. Laura also could have examined the custody investigator and rebutted his findings and credibility assessments with her own evidence. But without the second hearing Laura was unable to challenge the custody investigator's findings or present other evidence and arguments about the daughter's best interests.").

fully cut off communication and visitation with them, citing the "lasting impression" they left after providing "crucial and critical care" to the child from his birth until he reached two and a half years old. Taking all of their allegations as true, the Husbys raise factual disputes regarding whether ending visitation would be in the child's best interests. On remand the superior court must hold an evidentiary hearing before making findings of fact.

For similar reasons we also vacate the superior court's order denying the Husbys' motion to compel enforcement of the stipulated provision for updating contact information. The Husbys sought disclosure of the Monegans' current address so that the Husbys could send letters and gifts to the child. The Husbys frame this provision as a "non-visitation term[]" that survives any termination of their visitation rights.[47] But the notice provision is not a standalone right; it merely allows the parties to exercise their rights of contact under the visitation order. Nevertheless, because the superior court cut off this right without first holding a hearing on the disputed allegations, we must vacate its decision.

## V. CONCLUSION

We VACATE the superior court's orders modifying visitation and denying the Husbys' motion to compel and REMAND for further proceedings consistent with this opinion.

---

[47] There is no merit to the Husbys' argument that the provision for updating contact information cannot be modified because it was incorporated into the adoption order. Any visitation rights incorporated into an adoption order — including provisions for contact — are subject to future modification.